**Richard GREVE, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,**
**Respondent.**

**No. 20678.**

United States Court of Appeals
Ninth Circuit.

June 6, 1967.

---

5. See the latter part of appellant's testimony set out earlier in the opinion.

Walter P. Christensen, San Diego, Cal., for appellant.

Donald F. Turner, Asst. Atty. Gen., Howard E. Shapiro, Atty., Civil Div., Dept. of Justice; Joseph B. Goldman, Gen. Counsel, O. D. Ozment, Deputy Gen. Counsel, Robert L. Toomey, Associate Gen. Counsel, Warren L. Sharfman, Associate Gen. Counsel, Frederic D. Houghteling, Paul D. Gerber, Attys., C. A. B.; Nathaniel H. Goodrich, Gen. Counsel, F. A. A., Washington, D. C., for appellees.

Before BARNES and JERTBERG, Circuit Judges, and HALBERT, District Judge.

JERTBERG, Circuit Judge:

Petitioner seeks review of a Civil Aeronautics Board order which affirmed an emergency order of the Administrator of the Federal Aviation Agency, revoking his second class airman medical certificate.[1] The revocation was based upon petitioner's medical disqualification under the Federal Aviation Regulations, §§ 67.15(f) (2) (i) and 67.17(f) (2) (i), in that petitioner had recurrent episodes of paroxysmal arrhythmia (auricular fibrillation), a disorder of the heart, which in the Administrator's judgment rendered him unable safely to exercise the privileges of his airman's certificate.

On August 20, 1964, petitioner was issued a second class medical certificate pursuant to § 67.15 of the Federal Aviation Regulations. This section lists standards which must be met by the airman to qualify for a second class medical certificate. The list includes standards of visual and aural acuity and sets forth certain medical conditions which are disqualifying. The regulation concludes

---

1. The Administrator has provided that a second class airman medical certificate is required of airmen with commercial pilot certificates. (14 C.F.R. 61.111(c).)

with a section which covers general medical conditions, as follows:

"(f) General medical condition:

   *   *   *   *   *   *

"(2) No other organic, functional, or structural disease, defect, or limitation that the Civil Air Surgeon finds—

"(i) Makes the applicant unable to safely perform the duties or exercise the privileges of the airman certificate that he holds or for which he is applying;

   *   *   *   *   *   *

and the findings are based on the case history and appropriate, qualified, medical judgment relating to the condition involved."

On March 18, 1965, the Administrator issued an emergency order,[2] revoking that medical certificate on the grounds above stated.

Petitioner appealed this revocation to the Civil Aeronautics Board, and an evidentiary hearing was held before a Board Examiner. At the opening of the hearing petitioner was informed by counsel for the Federal Aviation Agency that one of the issues to be determined at the hearing was "whether or not you have paroxysmal arrhythmia", to which petitioner replied: "[I] have had recurrent episodes; I will have to stipulate to that because I reported that, I can do nothing but that. * * *."

The only witness offered by the Administrator was Dr. Edwin E. Westura, an expert cardiologist of the Office of Aviation Medicine of the Federal Aviation Agency.

In connection with this testimony there was offered by the Administrator and received into evidence two documents which were a part of the petitioner's medical record on file with the Federal Aviation Agency. One document is a written statement of the Head of Cardiology, San Diego Naval Hospital, Dr. W. F. Myers, setting forth the medical history of petitioner's heart condition. This written statement is dated December 30, 1964. The letter, in substance, states:

That the author of the letter had seen petitioner in consultation on several occasions over the preceding 23 months; visits had been of a routine nature with regard to periodic cardiovascular check ups because of the history of arrhythmia; that petitioner admitted to some recurrent transient episodes of paroxysmal atrial fibrillation during the period of time; that he had been free of any episodes which would incapacitate him from the performance of normal activities, such as driving an automobile, working, or engaging in either indoor or outdoor sports; that there had been no symptoms to suggest any significant reduction of blood flow to the central nervous system; that although paroxysmal atrial fibrillation was noted during a portion of the first electrocardiogram taken in the clinic, no arrhythmia had been detected on either physical examination or electrocardiographic study in the ensuing 23 months; that petitioner is not currently on a maintenance dosage of any medication; that trials of several medications, including Digitalis, and several forms of Quinidine, had been used in the past but without definite or consistent effect; that since none of these medications had resulted in abolition of the arrhythmia, and because the episodes had become significantly less frequent by history, they are not incapacitating; there has been no residual cardiac impairment, there is no evidence of any underlying organic heart disease, and because petitioner prefers not to take medication unless specifically indicated for definite therapeutic value, and because he had been able to quickly and adequately control the brief episodes of paroxysmal arrhythmia by physical relaxation and a modified Valsalva maneuver, maintenance dosage of medication was not considered indicated at the present time; that petitioner had been aware of the episodes of atrial fibrillation for many

---

2. FAA Regulations, §§ 609 and 1005(a).

months only as they manifest themselves by palpitation.

The other document is an undated written statement by petitioner which, in substance, states:

That petitioner's annual physical examination in November of 1958 uncovered some auricular fibrillation; that he was hospitalized for a few days, then became an out-patient; that after many tests and observation, all of which ruled out heart disease, petitioner appeared before a Special Board of Flight Surgeons and was declared fit for actual control of aircraft in Service Group I. That it was after the appearance before the Board that petitioner had two attacks that made him feel uncomfortable and lightheaded for a duration of about one hour each; that petitioner voluntarily gave up flying and that he had another similar episode in September, 1960; that since then any little episodes can be fully controlled by Digitalis; that petitioner never had any fibrillation while flying; that the condition is improving, mostly because of a sedentary life and some dieting; that most episodes now are of a few seconds duration and are mostly "irregularity", like that called to the attention of the examining physician; that petitioner is certain that he can fly without danger to himself or others and that he is by nature cautious and responsible and understands his problem.

The record discloses that Dr. Westura is a specialist in internal medicine and cardiology and is a member of the faculty of the Georgetown University School of Medicine, and executive officer of the Department of Medicine and a member of the Division of Cardiology of the Georgetown University Hospital. He became employed by the Federal Aviation Agency in July of 1964 as Chief of the Cardiovascular Laboratory at the Georgetown Clinical Research Unit in Washington, D. C., and later assumed the duties of Medical Officer for the Office of Aviation Medicine at the Federal Aviation Agency Headquarters in Washington, D. C. His duties involve two main areas. One is certification of airmen and the second is research in cardiovascular disease as pertains to the problems of civilian aviation.

In essence, Dr. Westura testified that arrhythmia (auricular fibrillation) causes a reduction of cardiac output which in turn reduces the supply of blood to the internal organs, the brain and the central nervous system, and that when uncontrolled the condition leads to cardiac failure and in rare cases to blood clotting. He further testified that arrhythmia may cause certain subconscious reactions involving fear, anxiety, anger, and hyperventilation which further aggravates the disorder of the heart beat.

Dr. Westura did not examine petitioner, and his knowledge with respect to petitioner's personal condition is based upon the two documents above summarized.

In sum, it was Dr. Westura's opinion that an attack of the sort that petitioner was subject to could create conditions that would be very dangerous in flying an airplane in terms of safety.

Petitioner called as a witness Dr. William Kornblum, a Flight Surgeon for the United States Navy, and a designated medical examiner for the Administrator. Dr. Kornblum testified that he examined petitioner on August 20, 1964, at which time he found petitioner physically qualified to hold a medical certificate. Dr. Kornblum did issue a second class medical certificate to the petitioner, and it is this certificate which the Administrator revoked. Dr. Kornblum was not asked to, and did not, express an opinion as to the disabling effects of paroxysmal arrhythmia on petitioner's operation of aircraft.

Petitioner offered in evidence a letter dated March 29, 1965, written by Dr. David B. Carmichael, a heart specialist of La Jolla, California, in which Dr. Carmichael stated that he had examined petitioner and concluded that petitioner "tolerates the rhythmic disorder well" and "he has not been incapacitated in any way in the four and one-half year inter-

val since I last examined him." The letter was not admitted in evidence for the reason that Dr. Carmichael was not present to testify.

At the conclusion of the hearing, petitioner was advised by the examiner that petitioner required the testimony of a qualified medical witness to establish that it is not reasonable to expect or to find that petitioner might be unable to safely perform the duties of an airman by reason of his recurrent episodes of paroxysmal arrhythmia. The hearing was continued to provide petitioner with an opportunity to obtain such evidence, and three and one-half months later the hearing was resumed at San Diego, California. At the resumed hearing, petitioner offered no further testimony and asked only that the letter of Dr. Carmichael, which had previously been denied admission into evidence, be attached to the record. Petitioner's counsel then stated: "We will offer no further evidence."

On the basis of the record the examiner, among other facts, found:

"That by reason of respondent's [petitioner's] recurrent episodes of paroxysmal arrhythmia the Civil Air Surgeon may reasonably find that [petitioner] is unable to safely perform the duties or exercise the privileges of an airman."

and concluded:

"That safety in air commerce or air transportation and the public interest require the affirmation of Administrator's order of emergency revocation issued March 18, 1965, revoking the second class medical certificate held by [petitioner]."

The petitioner appealed the decision of the examiner to the Civil Aeronautics Board on three grounds: first, that the Administrator failed to sustain his burden of proof; second, that an unbiased hearing officer had not been provided; and third, that the regulation under which petitioner was disqualified did not provide enforceable standards.

The Board reviewed the record in its opinion, including detailed findings on the testimony of Dr. Westura and Dr. Kornblum, and petitioner's medical history, and concluded that

"[I]t is clear from the above that the preponderance of the evidence supports the findings under sections 67.15(f) (2) (i) and 67.17(f) (2) (i) of the F.A.R. [Federal Aviation Regulations] that [petitioner] has a disease which makes him unable to safely perform the duties or exercise the privileges of the airman certificate that he holds and we conclude that the Administrator has met the burden of proof."

The Board further found that "the contention that the examiner prejudged the case is completely without merit." As to petitioner's challenge to the Administrator's regulation, the Board stated that it was without power to pass on the validity of such regulations.

On this review petitioner contends:

"1. The Federal Aviation Agency has failed to sustain the burden of proof.

"2. The Civil Aeronautics Board has condoned and adopted a biased judgment, and has in turn failed to provide an unbiased tribunal for hearing.

"3. The Federal Aviation Agency has failed to provide a regulation with enforceable standards."

Under the first contention, petitioner attacks the qualifications of Dr. Westura as an expert in his field, argues that the opinions expressed by him are based upon speculation, guess and surmise, and that the Board erroneously placed upon petitioner the burden of proof to establish that he was medically qualified to possess the medical certificate. Our review of the record convinces us that petitioner's assertions are without substance. In our view the findings of the Board are fully supported by substantial evidence.

Petitioner does not contend that the examiner had any personal bias

against the petitioner, but attacks the competency of the examiner to properly weigh and evaluate the evidence. The record does not support petitioner's contention, but, on the contrary, reflects that the examiner gave every opportunity to petitioner to offer evidence to rebut the substantial evidence offered by the Administrator. This petitioner failed to do. Furthermore, petitioner makes no assertion of bias on the part of the Board. The Board, in its opinion and order affirming the initial decision of the examiner, carefully and fully reviewed the record, and adopted as its own the findings and conclusions made by the examiner.

Petitioner's final contention is that the physical fitness standards set forth in Sec. 67.15(f) (2) (i), quoted supra, are incapable of reasonable interpretation, are too vague and indefinite to be enforced, and therefore unconstitutional.

■ The Board contends that review of the validity of the Administrator's regulations is not available in an appeal from a Board order under Sec. 1006(a) [49 U.S.C. § 1486], but may only be reviewed in a suit in a district court directly challenging the regulation. We do not agree. See Doe v. Civil Aeronautics Board, 356 F.2d 699 (10th Cir. 1966).

■ Under the Federal Aviation Act of 1958 [49 U.S.C. § 1301 et seq.], the Administrator is empowered and it shall be his duty to promote safety of flight of civil aircraft in air commerce by prescribing such reasonable rules and regulations, or minimum standards, governing other practices, methods, and procedures, as the Administrator may find necessary to provide adequately for national security and safety in air commerce. These regulations are not designed for the guidance of airmen, but rather for the guidance of medical experts in determining whether the airman is suffering from a disorder that makes him "unable to safely perform the duties or exercise the privileges of the airman certificate that he holds or for which he is applying." They provide a specific basis

upon which such findings are to be grounded. They must be based on the case history, and appropriate, qualified, medical judgment relating to the condition involved.

In light of the subject matter covered, the questioned regulations are as definitive as the circumstances permit. The regulations are not unconstitutionally vague.

The order under review is affirmed.