William M. HERRING, Petitioner,

v.

ADMINISTRATOR, FEDERAL AVIATION ADMINISTRATION, and National Transportation Safety Board, Respondents.

No. 75-3218
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 3, 1976.

William M. Herring, pro se.

Peter R. Laylin, Fed. Aviation Adm., Thomas G. Wilson, Atty., Rex E. Lee, Asst. Atty. Gen., Appellate Sec., Civil Div., Dept. of Justice, Washington, D. C., for respondents.

Before AINSWORTH, CLARK and RONEY, Circuit Judges.

PER CURIAM:

Petitioner William M. Herring seeks reversal of a National Transportation Safety Board order suspending his commercial pilot's certificate for violation of Federal Aviation Regulations (FARs). The alleged violations stem from power failure Herring's plane suffered while he was checking out another pilot on the aircraft. The two pilots were practicing touch-and-go landings at Opa Locka Airport near Miami when the failure occurred. They made a safe emergency landing on a closed runway of the airport, and, according to two witnesses, added two gallons of automotive fuel obtained from a nearby gas station to en-

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir., 1970, 431 F.2d 409, Part I.

able the plane to taxi back to its parking area. The FAA Administrator brought charges against Herring for violating three FARs,[1] and requested a 90-day suspension. After an oral hearing, an Administrative Law Judge sustained the Administrator as to the preflight action and careless operation charges, but found that Herring did not violate the FAR covering non-flight operations and imposed a 45-day suspension.

The Administrator's theory of the case was that the power failure occurred because Herring conducted an inadequate preflight check that either failed to disclose a low-fuel condition or that did disclose a moderately low condition Herring negligently ignored. Herring's theory was that a combination of mechanical malfunction and fuel-gauge tampering, the latter by one of the Administrator's witnesses, caused the failure. Both sides presented witnesses to support their respective theories.

Upon an examination of the record, we conclude that the ALJ's findings are supported by substantial evidence and are not based on any erroneous legal theory. Under the applicable statute, 49 U.S.C. § 1486(e) (1970), and well-established principles of administrative law, the petition must be denied and the order affirmed.

■ Petitioner's *pro se* brief urges that by failing to examine the plane itself or the records of its owner immediately after the incident, the Administrator failed to adduce the best evidence of the true cause of the engine failure. This nomenclature raises two possibilities: first, petitioner has misunderstood the nature and applicability of the best evidence rule, or second, there is somewhere in the law of evidence or the rules of the agency a requirement that such an examination be made. The first possibility does not benefit the petitioner. "Best evidence" has no meaning in the present context. It applies only to the requirement that the terms of a writing be shown by production of the original document, unless the document is shown to be unavailable for reasons other than the serious fault of the proponent. *See* C. McCormick, Evidence §§ 229–30 (Cleary ed. 1972). As for the second possibility, we have examined the record and the applicable regulations and have found no such requirement. It well may be that another judge hearing the same proof would have attached more weight to the testimony of petitioner's witness Morrison concerning possible alternate causes for the engine failure. Even the ALJ here concedes the closeness of the case. But since it does not appear that any specific factfinding responsibility laid on the agency was not carried out, the best evidence argument proposed by petitioner raises only weight of evidence and credibility choices. Such choices are for the agency, not this court.

1. § 91.5 Preflight action.

Each pilot in command shall, before beginning a flight, familiarize himself with all available information concerning that flight. This information must include:

(a) For a flight under IFR or a flight not in the vicinity of an airport, weather reports and forecasts, fuel requirements, alternatives available if the planned flight cannot be completed, and any known traffic delays of which he has been advised by ATC.

(b) For any flight, runway lengths at airports of intended use, and the following takeoff and landing distance information:

(1) For civil aircraft for which an approved airplane or rotorcraft flight manual containing takeoff and landing distance data is required, the takeoff and landing distance data contained therein; and

(2) For civil aircraft other than those specified in subparagraph (1) of this paragraph, other reliable information appropriate to the aircraft, relating to aircraft performance under expected values of airport elevation and runway slope, aircraft gross weight, and wind and temperature.

§ 91.9 Careless or reckless operation.

No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.

§ 91.10 Careless or reckless operations other than for the purpose of air navigation.

No person may operate an aircraft other than for the purpose of air navigation, on any part of the surface of an airport used by aircraft for air commerce (including areas used by those aircraft for receiving or discharging persons or cargo), in a careless or reckless manner so as to endanger the life or property of another.

[Amdt. 91–43, 32 F.R. 9641, July 4, 1967] 14 C.R.F. §§ 91.5, 91.9, & 91.10 (1975).

The petition is denied; the order is AFFIRMED.