Charles M. LOOMIS, Petitioner,

v.

John L. McLUCAS, Administrator, Federal Aviation Administration, and National Transportation Safety Board, Respondents,

No. 76–1110.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 16, 1977.

Decided April 21, 1977.

Fred L. Boettcher, Ponca City, Okl. (Boettcher & Garrison, Ponca City, Okl., on the brief), for petitioner-appellant.

Donald Etra, Washington, D. C. (Carla A. Hills, Asst. Atty. Gen., Washington, D. C., and Leonard Schaitman, Dept. of Justice, Washington, D. C., on the brief), for respondents-appellees.

Before McWILLIAMS, BREITENSTEIN, and DOYLE, Circuit Judges.

PETITION FOR REVIEW

McWILLIAMS, Circuit Judge.

Charles Mark Loomis, the petitioner, seeks review of an order of the National Transportation Safety Board which affirmed the Federal Aviation Administrator's denial of petitioner's application for a third-class (private pilot's) medical certificate. The issue is whether the Board's order is supported by substantial evidence. 49 U.S.C. § 1486(e). Our study of the record before the Board leads us to conclude that the Board's order is so supported, and we therefore affirm.

The requirements for a third-class medical certificate are set forth in 14 C.F.R. 67.17, and, in pertinent part, read as follows:

(a) To be eligible for a third-class medical certificate, an applicant must meet the requirements of paragraphs (b) through (f) of this section.

\* \* \* \* \* \*

(f) General medical condition:

(1) No established medical history or clinical diagnosis of diabetes melitus that requires insulin or any other hypoglycemic drug for control;

(2) No other organic, functional or structural disease, defect, or limitation that the Federal Air Surgeon finds—

(i) Makes the applicant unable to safely perform the duties or exercise the privileges of the airman certificate that he holds or for which he is applying; or

(ii) May reasonably be expected within two years after the finding, to make him unable to perform those duties or exercise those privileges;

and the findings are based on the case history and appropriate, qualified, medical judgment relating to the condition involved.

Loomis made application to the Federal Aviation Administrator for a third-class medical certificate which is a prerequisite for the issuance of a private pilot airman certificate. 14 C.F.R. 61.103(c). Loomis was examined by the Administrator's medical examiner and was ultimately issued a final denial by the Federal Air Surgeon, who found Loomis' "medical circumstances to be incompatible with flying safety" and were "disqualifying for certification under the applicable medical standards of the Regulations [14 C.F.R.] Section 67.17(f)(2)." Although more will be said about it later, Loomis had undergone heart surgery · in which his aortic valve was replaced with an artificial valve known as a Starr-Edwards Model 2320 prosthesis, and it was this "medical circumstance" which the Federal Air Surgeon found "to be incompatible with flying safety."

After his application was denied, first by the Federal Air Surgeon, and then by the Federal Aviation Administrator, Loomis petitioned the National Transportation Safety Board for review of the Administrator's denial. Pursuant to applicable statute, this petition for review was referred for hearing to an Administrative Law Judge. Such hearing was held. The Administrator's file, including Loomis' medical history and the examinations and reports made by the Administrator's medical examiner and surgeon, was marked as an exhibit and received in evidence. Additionally, Loomis called two expert witnesses, both admitted heart specialists. Each testified that based on his examination of Loomis, it was his opinion that Loomis was qualified for the third-class medical certificate. The Administrator called one expert witness, also an admitted heart specialist, who stated that though he had not personally examined Loomis, he had nonetheless examined Loomis' medical record, as made before the Administrator, and that based thereon it was his professional opinion that Loomis' medical condition was incompatible with flying safety.

The Administrative Law Judge reversed the Administrator and ordered the issuance of a third-class medical certificate to Loomis. The Administrator then appealed to the Board. The record before the Board was the same as that before the Administrative Law Judge. Oral argument was held before the full Board, and the Board, by a 4–1 vote, reversed the Administrative Law Judge and affirmed the Administrator's denial of the medical certificate, stating, in part, that "we find that petitioner failed to sustain the burden of proving that he is qualified to hold a medical certificate, principally as a result of his aortic valve transplant and the risks involved." After his petition for reconsideration was denied, Loomis filed his petition for review in this Court.

Loomis is 69 years of age, and apparently has been a private pilot since the 1930's. A brief statement concerning Loomis' physical condition is in order. In 1965 Loomis' doctor detected a heart murmur of an aortic insufficiency. It was also the doctor's impression that Loomis at that time was developing an aortic aneurysm. Loomis was examined at annual intervals between 1965 and 1969, during which time no significant change in his condition was found. When Loomis was examined in 1971, he was found to be near heart failure. From June 1 through June 6, 1971, Loomis was hospitalized for a heart catheterization study, a test to determine the exact nature of his condition and the extent to which it was affecting heart function. The catheterization study confirmed that he did have an aortic insufficiency and an aneurysm. Loomis was hospitalized again on July 19, 1971. Two days later, he underwent surgery in which his aortic valve was replaced with an artificial valve known as a Starr-Edwards Model 2320 prosthesis. His aortic aneurysm was resected and an artificial Teflon vessel was sewn in place.

Three days after his operation, Loomis suffered a right cerebral embolus which rendered him unable to move his left side for several days. By the time he left the hospital two weeks later, Loomis was ambulatory and was able to move his left arm and grip with his left hand. Six months

after Loomis' operation, he complained of arrhythmia for which he was treated with Quinidine. From the time of his July 1971 operation until ten days before Loomis' June 1974 hearing before the Administrative Law Judge, Loomis was taking an anticoagulant drug known as Coumadin for his condition.

Loomis was given physical examinations in April 1972, February 1973, and December 1973. During those examinations he was given various tests to determine cardiovascular function. Although different interpretations were presented, the record indicates that the Double Master's test administered to Loomis in February 1973 produced a positive (i.e., abnormal) result.

The basic issue to be resolved is whether the Board's order reversing the Administrative Law Judge's order and affirming the denial order made by the Administrator is supported by substantial evidence. *Herring v. Administrator, F.A.A.,* 532 F.2d 1003 (5th Cir. 1976) and *French v. Civil Aeronautics Board,* 378 F.2d 468 (10th Cir. 1967). As indicated, our study of the record convinces us that there is such supporting evidence. The Administrator's expert witness was Dr. Earl F. Beard, a physician certified in cardiology and internal medicine with considerable "aviation related experience in cardiology." As concerns Loomis' application for a medical certificate, Dr. Beard expressed the following opinion:

I believe that the underlying condition, and I will assume, in answering my—let me first say that I shall assume, in answering the question, that Mr. Loomis is, indeed, off anti-coagulant medicine. Now, I would have to say there that in view of the testimony, or in view of what I heard this morning of preceding testimony, anti-coagulants were stopped only a week or ten days ago. It is possible that the, all of the clotting factors in the blood have not returned completely to normal, but for purposes of answering your question, I will assume that he is off and will stay off anti-coagulant medication.

It would be my opinion, still, that the presence of an aortic valve prosthesis, with even the modern cloth covered metal poppet type, with its concomitant dangers of thrombo embolic complications, bacterial endocarditis, tissue over-growth about the valve, for example, plus the fact that a pathology of the dilated aortic root showed a connective tissue disorder, indicating an inherent weakness of the aortic room, or a possible variant of Marfan's Syndrome, which would be incompatible with flying safety.

The testimony of the three experts covers some 108 pages in the record before the Board. Dr. Beard's testimony transcribed into 37 pages. We have read his testimony carefully and are simply unable to conclude that such does not in itself constitute "substantial evidence" which would support the Board's action. The fact that Beard did not himself examine Loomis, and therefore based his opinions on Loomis' medical record as made before the Administrator, is admittedly a fact to be considered, but we do not believe that such fact is in itself sufficient to defeat a finding of substantial evidence. Nor does the fact that Loomis called two experts, and the Administrator only one, negate a finding of substantial evidence. Whether a party preponderates on a given issue is not to be determined solely on the number of witnesses testifying. Dr. Beard's testimony in our view constitutes substantial evidence supportive of the Board's order. In such circumstance it is not our function to reweigh the evidence, and accordingly we affirm the Board's order. *Doe v. Department of Transportation, Fed. Aviation Admin.,* 412 F.2d 674 (8th Cir. 1969).

Although the two experts called by Loomis testified that in their opinion the medical certificate should be granted Loomis, each had a word of caution. Each indicated that the situation should be watched closely, and that it might be wise to re-examine Loomis every six months. This fact was deemed significant by the Board in view of the further fact that there is a requirement in 14 C.F.R. 67.17(f)(2)(ii) that

the applicant shall have no defect which might reasonably render him within two years unable to properly perform.

Brief mention should be made of the medication known as Coumadin. An artificial heart valve may induce bloodclotting, and to combat such, Coumadin is sometimes prescribed. Coumadin itself may lead to bleeding because of a thinning of the blood. Accordingly, Coumadin must be carefully prescribed. Loomis had been taking Coumadin, but about ten days before the hearing before the Administrative Law Judge had been taken off the medication. The use of Coumadin was commented upon by each of the three experts. And the Board also commented upon it, and in denying the petition to reconsider, the Board apparently misspoke itself and stated that a *discontinuance* of Coumadin *increases* a patient's bleeding risk. It is agreed by counsel that a discontinuance of the use of Coumadin *decreases* bleeding risk. Counsel for Loomis suggests that this misstatement by the Board demonstrates that it did not understand the entire case and that this fact alone requires reversal. We do not agree. The real question is whether the Board's action finds substantial support in the record and, as indicated, Dr. Beard's testimony in our view constitutes substantial evidence.

Counsel for Loomis also suggests that the Board's action indicates blind adherence to the broad proposition that no person with an artificial heart valve implant can ever get a third-class medical certificate. We do not believe such to be the case. Loomis' application was considered on its own merits.

Order affirmed.