**Jack C. BLACKWELL and William C. Strand, Petitioners,**

v.

**Langhorne M. BOND, Administrator, Federal Aviation Administration, Respondent.**

No. 79–2646

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

June 16, 1980.

W. C. Douglas Friederichsen, Gretna, La., for petitioners.

Vincent L. Gambale, U. S. Dept. of Justice, Civ. Div., Appellate Staff, Washington, D. C., for respondent.

Before BROWN, TJOFLAT and FRANK M. JOHNSON, Jr., Circuit Judges.

PER CURIAM:

Jack C. Blackwell and William C. Strand (Pilots), two certified commercial pilots, appeal the orders of the Federal Aviation Administration (FAA) suspending their airman pilot certificate for fifteen days for violation of §§ 91.79(c) and 91.9 of the Federal Aviation Regulations (FAR), 14 C.F.R. §§ 91.79(c), 91.9 (1979). These orders were affirmed by the National Transportation Safety Board (NTSB) after a hearing before a NTSB administrative law judge although the ALJ did reduce the suspension to ten days. On appeal, the NTSB affirmed the ALJ's orders and later denied a petition for rehearing. We affirm.

Sections 91.79(c) and 91.9 of the FAR respectively provide:

14 C.F.R. 91.79:

> Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:

> \* \* \* \* \* \*

> (c) *Over other than congested areas.* An altitude of 500 feet above the surface except over open water or sparsely populated areas. In that case, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.

> \* \* \* \* \* \*

14 C.F.R. 91.9:

> No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Most of the basic facts of this case are undisputed. On December 27, 1977, between 9:00 and 9:30 a. m., both of the Pilots, operating Cessna 180 float planes for Harvey Canal Seaplane, Inc., took off from the Industrial Canal near New Orleans, Louisiana, with a total of five passengers, three in Blackwell's plane and two in Strand's. The canal is just south of the adjoining Lake Pontchartrain, and at this juncture is the Seabrook Roadway Bridge and an adjacent railroad bridge.

The wind was out of the north at fifteen knots, making a takeoff to the north into the wind preferable to a takeoff to the south. Normal procedure for a takeoff to the north was to taxi to about two miles south of the bridges. This was enough distance to allow the aircraft, as they headed north towards the bridges, to clear them by about 500 feet. On this occasion, however, two tows of about three barges each entered the canal just as the Pilots were taxiing south to take off. These barges completely blocked the paths of the airplanes, preventing them from taxiing any further than twelve hundred feet south of the bridges.

Instead of waiting for the barges to dock and clear the canal, the Pilots took off from this location, travelling under the closed Seabrook Roadway Bridge and through the raised railroad bridge. The aircraft were travelling across or through the water at approximately forty-five knots, or "on the step," just below the speed at which they would become airborne.[1] The opening in the roadway bridge through which the Cessnas, with wingspreads of 36.5 feet, passed is approximately 46.5 feet high and 93 feet across. The railway bridge opening is 86 feet wide.

▬ The only challenge the Pilots make to the agency findings below is that they are incorrect based upon the record. Our review of these findings is, of course, limited to a determination of whether they are supported by substantial evidence in the record. *Herring v. Administrator, Federal Aviation Administration*, 532 F.2d 1003, 1004 (5th Cir. 1976). We do not reweigh the evidence. *Nadiak v. Civil Aeronautics Board*, 305 F.2d 588, 592 (5th Cir. 1962).

Our review of the record in this case reveals evidence substantial enough to affirm the findings of the ALJ below. There was testimony by the Seabrook Roadway Bridge tender, who reported the incident to the FAA, that even given the strong current and outgoing tide at the time, the barges would have been docked within fifteen or twenty minutes, clearing the canal for the Pilots to make the usual two-mile taxi south for takeoff. The evidence shows that none of the passengers were in such a hurry that they could not have waited twenty minutes or even longer to take off. In view of the foregoing facts it was not necessary to pass under the bridge to accomplish takeoff in this instance, and therefore Section 91.79 was violated.

There was additional testimony that crew boats continually travel under the bridge at high rates of speed, passing through a blind spot where their operators would not be able to stop in time to avoid the airplane passing under the bridge. In view of this testimony, we cannot reverse the ALJ's finding that these Pilots operated their aircraft in a careless or reckless manner in violation of Section 91.9.

AFFIRMED.

---

1. Blackwell took off first; the record is inconsistent as to whether his airplane was "on the step" or actually airborne as it passed under the Seabrook Bridge. The record states consistently that Strand's airplane was "on the step" as he passed under the bridge. This factual issue is irrelevant, however, since the regulations in question refer to the operation, and not only the flying, of aircraft.