Harold R. DODSON, Petitioner,

v.

NATIONAL TRANSPORTATION SAFE-
TY BOARD and The Federal Aviation
Administration, Respondents.

No. 80–1440.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1980.
Decided March 12, 1981.*

* This appeal was originally decided by unreport-
ed order on February 11, 1981. See Circuit
Rule 35. The court has subsequently decided
to issue the decision as an opinion.

David R. Aplington, Westervelt, Johnson, Nicoll & Keller, Peoria, Ill., for petitioner.

Carlene V. McIntyre, Dept. of Justice, Civil Division, Washington, D. C., for respondents.

Before CUMMINGS, PELL and WOOD, Circuit Judges.

PER CURIAM.

Harold R. Dodson, the petitioner, seeks review of an order of the National Transportation Safety Board ("NTSB"). The Administrator of the Federal Aviation Administration ("FAA") denied Dodson's application for a second class airman's medical certificate. The administrative law judge ("ALJ"), on appeal, set aside the denial because she found petitioner's coronary artery disease could not reasonably be expected to lead to myocardial infarction. The NTSB reversed the ALJ and affirmed the denial of the certificate. We conclude that the petition for review must be denied. The NTSB's order is affirmed.[1]

## I.

The gravamen of Dodson's petition addresses the issue of whether the NTSB order denying the certificate was supported by substantial evidence as mandated by 49 U.S.C. § 1486 (1976 and Supp. III 1979). We must first determine whether petitioner's coronary condition could reasonably be expected to lead to myocardial infarction (heart attack). The NTSB found petitioner to be subject to risk of unacceptable proportions and therefore his condition could reasonably result in a myocardial infarction. We agree. Petitioner has not presented sufficient evidence to demonstrate that this risk is within the acceptable limits for aviation safety. 49 U.S.C. § 1422 (1976 and Supp. III 1979).

The certificate denial by the FAA was based upon 14 C.F.R. §§ 67.15(e)(1)(ii) and 67.15(f)(2) (1980). Section 67.15(e)(1)(ii) disqualifies applicants with angina pectoris or other evidence of coronary disease which "may reasonably be expected to lead to myocardial infarction."[2] Section 67.15(f)(2) disqualifies all applicants whose medical condition makes them unable to safely perform the duties under or exercise the privileges of an airman's certificate. Since peti-

1. As a preliminary matter, we must briefly consider petitioner's motion to strike a supplemental letter submitted to the court by the government. Since we find the letter to have responded to an issue which was the subject of inquiry by this court at oral argument, and that it contained no other argument or explanation under Circuit Rule 11, we deny the motion to strike. In any event the letter does not figure in our decision.

2. A myocardial infarction results from the occlusion of one or more of the blood vessels feeding the heart's tissues. When the vessel(s) shut down, the tissue dies due to a lack of continued sustenance. The resultant heart damage depends upon the size and location of the occluded vessel(s) and the area of tissue involved. Day v. N.T.S.B., 414 F.2d 950, 951 n. 1 (5th Cir. 1969).

tioner's arteriosclerosis fits within the former more narrow regulation, it follows that he is also disqualified under the more general provisions of Section 67.15(f)(2). *See, e. g., Petition of Ewing*, 1 NTSB 1192, 1193 (1971).

It is undisputed that two of petitioner's three coronary arteries are occluded or stenosed to an 85% level, which accordingly causes approximately 30% of his heart muscle to be undernourished. The testifying cardiovascular experts agreed that a 75% blockage in *any* artery is critical and clinically significant. The third coronary artery is currently at a 40% level of stenosis.

What is disputed, however, is the resultant degree of risk of myocardial infarction to which petitioner's condition makes him susceptible. Petitioner's expert, Dr. Thomas J. Zimmerman, a Board certified physician in internal medicine and cardiovascular diseases, opined that petitioner had a 2% per year chance of having a fatal heart attack and a 4% per year chance of having a nonfatal heart attack. Zimmerman also stated that these percentages would be somewhat diminished given petitioner's efforts to control his various risk factors, such as obesity, smoking, and hypertension.

Dr. Robert I. Martin, who also testified for petitioner, is a family practitioner as well as an occupational and industrial physician, but does not specialize in cardiovascular disease. He has served as a designated aviation medical examiner since 1976. His opinion indicated that because petitioner had reduced his risk factors, his chance of having a myocardial infarction was little (if any) greater than any other person of similar age, weight, or lifestyle. He presented no specific risk percentages in the proceedings below.

■ A third expert, Dr. Albert J. Miller, is Board certified in internal medicine (1956) and cardiovascular diseases (1965).

He is a cardiovascular specialist who has been in practice for thirty-five years. Miller testified for the Administrator.[3] In his opinion, which was based upon the most conservative studies in the literature covering a maximum five-year period, petitioner's chance of having a fatal and nonfatal infarction were respectively 5% and 10% per year. Thus, within two years, the chance would be 10% and 20%. Miller was uncertain as to the impact of the alleviation of the risk factors, but stated that even in the absence of the factors, petitioner's coronary artery disease would possibly progress with the passage of time.

The ALJ chose to accept Dr. Zimmerman's opinions over Dr. Miller's as appearing to be more logical, persuasive, and encompassing more in-depth considerations of the various elements of petitioner's condition. Thus, she concluded that petitioner's probability of having a myocardial infarction was 4% per year, whereas the percentage for a man of similar age with no diagnosis of cardiovascular disease would be about 1%. She also accepted Dr. Martin's opinion that there would be little or no difference between the chance for attack of petitioner and a man with no disease but who presented similar risk factors with similar levels of severity. She concluded, therefore, that petitioner's disease could not reasonably be expected to lead to myocardial infarction. Since petitioner had evinced no anginal symptoms during the previous year, the ALJ further determined that petitioner's disease was not of sufficient severity to be reasonably expected, at that time or within two years, to render him unable to safely perform the duties or exercise the privileges of a holder of an airman's certificate.

Upon appeal, the NTSB reversed the ALJ's decision and found petitioner to be disqualified for airman medical certification. The NTSB determined that the rec-

---

**3.** Petitioner makes much of the fact that Dr. Miller did not personally examine him, and instead relied upon medical records in formulating his opinions. While this fact is to be considered, such a fact in itself is not sufficient to defeat a finding of substantial evidence. *See*

*Loomis v. McLucas*, 553 F.2d 634, 636 (10th Cir. 1977); *Doe v. Dept. of Transportation, F. A. A.*, 412 F.2d 674, 680 (8th Cir. 1969). Since petitioner has not established other facts which would defeat such a finding, his argument here must fail.

ord did not support the ALJ's initial decision. Therefore, the NTSB ruled that petitioner had not met his burden of establishing by a preponderance of substantial, reliable, and probative evidence that he was qualified for a medical certificate under Sections 67.15(e)(1)(ii) and 67.15(f)(2).

In reaching its result, the NTSB evaluated the expert testimony. The Board noted that Dr. Zimmerman admitted upon cross-examination that petitioner was in real danger of having a myocardial infarction, an incapacitating event. Dr. Martin, in addition, admitted that while petitioner's condition was improved, his arteriosclerosis was probably "almost exactly the same as a year ago." Dr. Miller, as mentioned, was of the view that petitioner presented an unacceptable risk of myocardial infarction and sudden death. The NTSB, after detailing the disagreement among the experts as to petitioner's percentage of risk of myocardial infarction, looked to the evidence upon which all of the experts were in accord. This included the fact that petitioner's two artery blockages were above the critical level, and therefore he was subject to an increased likelihood of attack. The NTSB added that while the risk factors had been reduced or alleviated, all experts agreed that petitioner's degree of artery disease remained the same, and some believed would even worsen over time. The NTSB also explained that granting a medical certificate to a person with petitioner's degree of coronary artery disease would be contrary to NTSB policy and inconsistent with past NTSB precedent which had found qualification only when all three coronary arteries were open, properly flowing, and likely to remain in such a state.

■ Petitioner attacks the NTSB order as not being supported by a preponderance of substantial evidence. He avers that the NTSB's reversal was arbitrary and capricious and should therefore be reversed. He

argues that his condition may not reasonably be expected to lead to myocardial infarction. We find that the NTSB order, reversing the ALJ, is amply supported by the record, which shows petitioner to have significant artery blockage so as to subject him to unreasonable risk of infarction and which renders him a substantial risk to air safety. Our study of the record convinces us that there is in fact such substantial evidence.[4] *Loomis v. McLucas,* 553 F.2d 634, 636 (10th Cir. 1977); *Herring v. Administrator, F. A. A.,* 532 F.2d 1003 (5th Cir. 1976) (per curiam).

That part of the expert testimony which is in agreement and is uncontested, in our view, constitutes substantial evidence supportive of the NTSB order. In such circumstances, it is not our function to reweigh or reevaluate such evidence. *Terry v. N. T. S. B.,* 608 F.2d 418, 421 (10th Cir. 1979); *Doe v. Dept. of Transportation, F. A. A.,* 412 F.2d 674, 677 (8th Cir. 1969) (Blackmun, J.). Since the NTSB's findings are supported by substantial evidence they are conclusive upon us. 49 U.S.C. § 1486(e) (1976 and Supp. III 1979). *See Stern v. Butterfield,* 529 F.2d 407, 409 (5th Cir. 1976).

■ It is settled that the burden of proving eligibility for a certificate rests with the petitioner. *Doe v. Dept. of Transportation, F. A. A.,* 412 F.2d 674, 677 (8th Cir. 1969); *Day v. N. T. S. B.,* 414 F.2d 950, 952 (5th Cir. 1969); *Greve v. C. A. B.,* 378 F.2d 651, 655 (9th Cir. 1967). While we note that there was a conflict as to the percentage of likelihood of infarction, we conclude, given the evidence upon which there is no dispute, that petitioner has failed to meet the burden of establishing that his condition could not reasonably lead to myocardial infarction.

■ Petitioner also assails the NTSB's reversal of the ALJ's decision.[5] The

---

4. Substantial evidence here requires more than a mere scintilla of evidence; namely, such evidence as a reasonable mind might accept as adequate to support a conclusion. The evidence must be based upon the record as a whole. *Doe v. Dept. of Transportation, F. A. A.,* 412 F.2d 674, 677 (8th Cir. 1969) (and the cases cited therein).

5. We note parenthetically that the substantial evidence standard is not modified in any way when the NTSB and the ALJ disagree. *See Universal Camera Corp. v. N. L. R. B.,* 340 U.S. 474, 496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951).

NTSB's reversal, however, is vulnerable only if it fails to reflect attentive consideration of the ALJ's decision. However, the reversal can be upheld if the NTSB presents a reasoned explanation. *Greater Boston Television Corp. v. F. C. C.*, 143 U.S.App.D.C. 383, 444 F.2d 841, 853 (1970), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). The ALJ was primarily influenced by petitioner's recent efforts to control and alleviate his risk factors. The NTSB noted the lack of definitive evidence that risk factor control would or would not reduce the specific risk percentages. The ALJ also relied upon petitioner's lack of symptoms during the year preceding the hearing. The NTSB noted that the experts had emphasized that the fact that the petitioner had been asymptomatic did not alter the fact that he continued to have significant and critical coronary artery disease. Accordingly, the NTSB made clear not only its awareness of the ALJ's conclusions, but also sufficiently explained its reasons for reaching a different result. Moreover, in the last analysis, it is the NTSB's function, not the ALJ's, to render the ultimate decision, and where, as here, there is substantial evidence supporting the result, it is the NTSB's choice which governs. *Id. Accord, Williams v. Bell*, 190 U.S.App.D.C. 343, 587 F.2d 1240, 1246–47 (1978).

### II.

Petitioner also challenges 14 C.F.R. § 67.15(e)(1)(ii) (1980) as being unconstitutionally vague and therefore violative of requisite due process guarantees. Specifically, he avers that the standard "may reasonably be expected to lead to myocardial infarction" grants the Administrator excessive discretion in issuing or denying medical certificates, and further is void of objective criteria and guidelines to aid in the interpretation of the regulation. He adds that due process requires the standard to be fair and objective, as well as consistent in its application. He concludes by stating that because the regulation is invalid, the denial of a medical certificate must also be invalid.

We find that the regulation is a valid and proper exercise of the Administrator's statutory mandates: to promote safety of flight in air commerce, 49 U.S.C. § 1421(a) (1976 and Supp. III 1979); and to issue an airman's certificate to any person who "possesses proper qualifications for and is physically able to perform the duties pertaining to, the position for which the airman certificate is sought," 49 U.S.C. § 1422(b) (1976 and Supp. III 1979). *See Coppenbarger v. F. A. A.*, 558 F.2d 836, 838 (7th Cir. 1977). The requirements embodied in the regulation are clearly related to the legitimate purposes which Congress sought to achieve through its enactment of the Federal Aviation Act. *Id.*, 558 F.2d at 840. *See Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973); *West v. Bergland*, 611 F.2d 710, 721 (8th Cir. 1979), *cert. denied*, —— U.S. ——, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980).

The regulation is not designed for an airman's guidance, as petitioner argues, but is for the guidance of medical experts in their determination of whether the airman is suffering from a disorder which may reasonably be expected to lead to myocardial infarction. *See Greve v. C. A. B.*, 378 F.2d 651, 656 (9th Cir. 1967). The regulation provides a reasonably specific basis upon which such findings are to be grounded. Until medical knowledge points, with certainty, in another direction, we find that the regulation is as definitive as the circumstances permit. Further, the regulation sufficiently serves to inform the petitioner, with the requisite certainty and explicitness of the standards by which his fitness to fly is to be judged. *Doe v C. A. B.*, 356 F.2d 699 (10th Cir. 1966). *See Daily v. Bond*, 623 F.2d 624, 626–27 (9th Cir. 1980) (per curiam). Any further specificity would be impractical if not impossible. *Arnett v. Kennedy*, 416 U.S. 134, 159–61, 94 S.Ct. 1633, 1646–47, 40 L.Ed.2d 15 (1974).

We are mindful that while reasonable minds may differ as to the relative efficacy of the existing regulatory standard, we

should defer, in the absence of weighty reasons, not present here, to the informed expertise and judgment of the FAA to whom Congress delegated appropriate regulatory authority. *Graham v. N. T. S. B.,* 530 F.2d 317, 319 (8th Cir. 1976); *Doe v. Dept. of Transportation, F. A. A.,* 412 F.2d 674, 678 (8th Cir. 1969) (and the cases cited therein). If it can be shown that applicants with a medical condition which may reasonably be expected to result in myocardial infarction are more likely to suffer heart attacks while flying than those without such a condition, then it is apparent that the regulatory standard is not unconstitutionally vague but properly promotes air safety which is the purpose of the act. *See Day v. N. T. S. B.,* 414 F.2d 950, 953 (5th Cir. 1969); *Delta Air Lines, Inc. v. United States,* 490 F.Supp. 907, 916 (N.D.Ga.1980).

### III.

Petitioner objects to the Administrator's introduction of certain exhibits in the proceedings below. Specifically, he requests this court to remand his appeal to the NTSB for a new hearing because of the alleged error in admitting two of the Administrator's exhibits. Petitioner's objection to their admittance is grounded upon the Administrator's counsel's failure to comply with a procedural rule which required pilots to be furnished advance copies of all medical records which will be introduced at the hearing. The documents in question were not presented to him in advance. Petitioner argues that this failure to provide the records in advance hampered the preparation of his case and thus presents an appropriate ground for remand.

■ It is settled that agency action will not be upset in the event of a harmless procedural error. *Greater Boston Television Corp. v. F. C. C., supra,* 444 F.2d at 851. *Accord, Alabama Association of Insurance Agents v. Board of Governors of the Federal Reserve System,* 533 F.2d 224, 236 (5th Cir. 1976), *vacated in part,* 558 F.2d 729 (1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978). This is especially true where the error was harmless because there was no resulting prejudice, *id.; McCulloch Interstate Gas Corp. v. F. P. C.,* 536 F.2d 910, 913 (10th Cir. 1976), or where the failure to follow the procedural rule inflicts no significant injury upon the party entitled to the rule's observance, *E. E. O. C. v. Kimberly-Clark Corp.,* 511 F.2d 1352, 1360–61 (6th Cir.), *cert. denied,* 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975).

■ Petitioner does not adequately demonstrate how he was prejudiced or injured by the admission of the exhibits. In addition, it appears that at least a portion of the information contained in the exhibits was already in petitioner's possession at the time of the original submission. We note also that the NTSB did not specifically rely upon any of the exhibits in question. Thus, we find the admission of the exhibits, over petitioner's objection, to be harmless error which in no way affected the fairness of the ultimate decision. *See Starr v. F. A. A.,* 589 F.2d 307, 315–16 (7th Cir. 1978). Therefore, petitioner's claim here must fail.

### IV.

Petitioner also asserts that the Administrator failed to timely perfect his appeal to the NTSB, due to the untimeliness of the filing of his brief. We find the brief to have been timely filed, due to the NTSB's grant of a thirty day extension to the Administrator, and determine accordingly that the Administrator was not in default. This ground for remand is therefore without merit.

The petition for review is denied, order affirmed.