David John ERICKSON, Petitioner,

v.

NATIONAL TRANSPORTATION SAFETY BOARD, and Donald D. Engen, Administrator, Federal Aviation Administration, Respondents.

No. 84–2083.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 16, 1984.

Decided March 26, 1985.

John P. Lommen, Minneapolis, Minn., for petitioner.

Vicki S. Leemon, Washington, D.C., for respondents.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

David John Erickson appeals a National Transportation Safety Board order affirming the revocation of his commercial pilot certificate by the Federal Aviation Administration. Erickson, in seeking an upgraded certificate, had submitted his pilot's logbook to the FAA. The FAA found that Erickson had made fraudulent and intentionally false entries in the logbook and revoked his certificate. Erickson successively appealed to the National Transportation Safety Board, resulting in a hearing before an administrative law judge, and then to the full NTSB, both appeals resulting in affirmance of the revocation. Erickson now argues that there was insufficient evidence to support the Board's finding that the logbook entries were intentionally false. We affirm the order of the NTSB affirming the order of revocation.

David John Erickson is a pilot who sought in 1982 to upgrade the commercial pilot certificate he held by adding an instrument rating. He passed a proficiency check and presented a logbook to show that he had the necessary 1200 hours of flight time. Douglas Solseth, an aviation safety inspector to whom the logbook was presented, after noticing an apparent error, examined the logbook in greater detail and cross-checked it with the crew and duty time sheets maintained by the owners of the aircraft in which Erickson had logged his flying time.[1] Solseth eventually determined that Erickson had falsified 292.7 of the 1245 hours he had logged. This determination led the FAA to revoke Erickson's commercial pilot certificate and to order that he could not apply for another certificate for one year following surrender of his certificate.

Erickson appealed the revocation, and a formal hearing was held before an administrative law judge of the NTSB. At that hearing Solseth's report that was the basis for the revocation was introduced into evidence. Solseth himself testified, essentially describing the discrepancies he found. The FAA had charged Erickson with false entries relating to five aircraft. The ALJ

---

1. 14 C.F.R. § 135.63(a)(4)(vii) (1983) provides that:

Each certificate holder shall keep at its principal business office or at other places approved by the Administrator, and shall make available for inspection by the Administrator * * * [t]he pilot's flight time in sufficient detail to determine compliance with the flight time limitations of this part.

found, however, that the charges relating to two of these could not be sustained.

Of the remaining three groups of entries, the first involved a Cessna aircraft owned by Air Freight Express. Sara Wastvedt, one of Air Freight Express's pilots, testified for Erickson that he had accompanied her on several flights and actually had flown the plane while with her. Wastvedt also testified that on certain occasions Erickson was not paid by the company for the flights but flew only to log the flight time necessary to upgrade his certificate. The ALJ gave this testimony great credence, noted that on one occasion Erickson had logged time when the aircraft did not fly at all, and found 63.6 hours in the Cessna were falsely logged.

The second group of entries involved a Beechcraft King Air plane owned by North American Life and Casualty. A North American pilot, Ron Houle, with whom Erickson flew on occasion, had told Solseth while he was conducting his investigation that Erickson manipulated the controls of the Beech aircraft only on "deadhead" flights (i.e., flights on which neither freight nor passengers were carried). At the hearing Houle testified, with considerably less clarity, that Erickson was allowed to fly the craft with passengers on board "after he got some experience" on deadhead flights. Erickson, in contrast, testified that he had operated the aircraft on both deadhead and passenger-carrying flights starting with the first flight. The ALJ credited Erickson with a portion of the time logged on this aircraft but concluded that he had falsely logged 45.9 hours. The ALJ also found that Erickson had falsely logged 1.5 hours in a Mitsubishi aircraft.

Erickson appealed to the full NTSB. The Board adopted the ALJ's findings as to the Cessna aircraft, observing that even if Erickson were given credit for all "off duty" hours logged, he still "offered no reasonable explanation for logbook time which exceeded * * * the time reflected in Air Freight records for the same flights." *David John Erickson,* Order EA–2033 at 4,

(July 25, 1984). The Board, noting that the ALJ had incorrectly calculated the number of falsely logged hours for the Beech aircraft, determined that "by our calculation based on corporate records and in light of Mr. Houle's testimony, it would appear that respondent's logbook contains perhaps as many as 50 falsely claimed hours of pilot time." *Erickson,* at 7. The Board did not address the finding of 1.5 hours falsely logged in the Mitsubishi plane.

> Finally, the Board stated that it was satisfied that the evidence supports the law judge's finding that certain logbook entries were intentionally false. * * * The Air Freight records which are required * * * raise an inference that the pilot time in respondent's logbook that is not supported by these records was false, and the law judge did not accept respondent's testimony that he flew all of the hours recorded in this logbook. In light of respondent's failure to convincingly explain away or reconcile all of the discrepancies between his logbook and the official corporate records and, in the case of * * * [the Beech aircraft], the conflict between his testimony and Mr. Houle as to whether respondent was the sole manipulator of the controls at all times on their flights together, we find no reason for disturbing the law judge's credibility assessment.

*Erickson,* at 8. Therefore, it affirmed the revocation of Erickson's certificate. Under 49 U.S.C. § 1486(a) (1982), Erickson now appeals the order of the NTSB so affirming revocation.

Our role in review of cases decided by the National Transportation Safety Board is limited. "The findings of facts by the Board * * *, if supported by substantial evidence, shall be conclusive." 49 U.S.C. § 1486(e). As we recently observed in *Owens v. National Transportation Safety Board,* 734 F.2d 396, 398 (8th Cir.1984):

> [T]he Board's findings are not to be disturbed if supported by substantial evidence on the record as a whole. *Stix v.*

*Bond,* 569 F.2d 1029, 1031 (8th Cir.1978), *Doe v. Department of Transportation,* 412 F.2d 674, 677 (8th Cir.1969). We must determine whether the Agency 'could fairly and reasonably find the facts as it di .' *Western Airlines, Inc. v. CAB,* 495 F.2d 145, 152 (D.C.Cir.1974), quoting *Braniff Airways, Inc. v. CAB,* 379 F.2d 453, 462 (D.C.Cir.1967).

In the present case Erickson was found to have violated 14 C.F.R. § 61.59(a)(2) (1983), which provides that "[N]o person may make or cause to be made * * * [a]ny fraudulent or intentionally false entry in any logbook, record, or report that is required to be kept, made, or used, to show compliance with any requirement for the issuance, or exercise of the privileges, or any certificate or rating under this part." He argues on appeal that the evidence was insufficient to support this finding. As the Ninth Circuit pointed out in *Hart v. McLucas,* 535 F.2d 516, 519 (9th Cir.1976), the regulation proscribes "two overlapping, but nevertheless separate offenses, one involving fraud, the other involving 'intentional' falsity"—offenses to which three elements are common: falsity, materiality and knowledge. Erickson does not argue that the disputed entries were immaterial. Thus, the particular question we are faced with is whether the evidence in the case was sufficient to justify the finding that Erickson knowingly made false entries in his logbook.

 As Erickson points out, the burden of proving that he so acted lay upon the Federal Aviation Administration. 49 C.F.R. § 821.32 (1984). However, while the FAA bears this ultimate burden of persuasion, the burden of producing evidence may shift once a prima facie case has been established. *See Newman v. Shaffer,* 494 F.2d 1219, 1220 (2d Cir.1974) (absence of logbook entries made out prima facie case of failure to inspect and shifted burden of going forward with the evidence); *Walters v. McLucas,* 597 F.2d 1230, 1232 (9th Cir.), *cert. denied,* 444 U.S. 932, 100 S.Ct. 277, 62

L.Ed.2d 190 (1979). In addition, the Board's inference from circumstantial evidence that Erickson knowingly made false entries was not an impermissible step if supported by substantial evidence. *See Western Airlines, Inc. v. Civil Aeronautics Board,* 495 F.2d 145, 152 (D.C.Cir.1974) (reviewing court must accept agency's conclusions if findings supporting them are in turn supported by substantial evidence); *see also Scripps-Howard Radio v. Federal Communications Commission,* 189 F.2d 677, 681 (D.C.Cir.) (in agency's decision, ultimate facts as found must appear as rational inferences from findings of basic facts), (quoting *Johnston Broadcasting Co. v. Federal Communications Commission,* 175 F.2d 351, 357 (D.C.Cir.1949)), *cert. denied,* 342 U.S. 830, 72 S.Ct. 55, 96 L.Ed. 628 (1951). Further, since 14 C.F.R. § 61.59(a)(2) has been interpreted in light of traditional common law definitions of fraud and misrepresentation, *see Hart,* 535 F.2d at 519, we also observe that it has long been held that the element of knowledge in such cases may be inferred from circumstantial evidence. *See, e.g., Jensen v. Sohler,* 601 F.2d 353, 355 (8th Cir.1979) (state of mind necessary to show fraud may be established by inferences arising from facts and circumstances in evidence), (quoting *Funke v. Holland Furnace Co.,* 78 S.D. 374, 378, 102 N.W.2d 668, 670 (1960) and *Hawkins v. Kennedy,* 79 S.D. 33, 37–38, 107 N.W.2d 340, 342 (1961), (quoting in turn *Foster v. Dwire,* 51 N.D. 581, 199 N.W. 1017, 1021 (1924))).

 Erickson claims that "there is not one scintilla of competent probative evidence that supports the * * * finding that * * * [his] log book entries were fraudulent or intentionally false," arguing instead that "the FAA, and the Board have erroneously taken the position that whenever Erickson logged time, which he could not verify, it must be disallowed and considered a fraudulent entry." The findings, however, were not based solely on Erickson's inability to verify his entries but also

on other documents and testimony that indicated the entries were made with knowledge of their falsity. Erickson cannot argue that there was an *absence* of evidence, but rather only that certain evidence was given undue credence. However, "[i]t is not our function to reexamine credibility determinations of the Administrative Law Judge." *Owens*, 734 F.2d at 398 (citing *Loomis v. McLucas*, 553 F.2d 634, 636 (10th Cir.1977); *Stern v. Butterfield*, 529 F.2d 407, 409 (5th Cir.1976); and *Air East, Inc. v. National Transportation Safety Board*, 512 F.2d 1227, 1233 (3d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975)). Here the ALJ's finding that Erickson's explanations were not credible was the basis for the ultimate decision of the Board.

Specifically, with respect to the Cessna, Erickson argues that Solseth concluded his entries were fraudulent simply whenever there was a discrepancy between the logbook entries and the crew and duty sheets.[2] Erickson argues that the comparison alone was not sufficient to meet the FAA's burden of proof, pointing out that his witness, pilot Sarah Wastvedt, testified that Erickson did the actual flying when he accompanied her on his "off duty" hours, and suggesting that discrepancies could have arisen because the crew and duty sheets merely reflected flight time, while Erickson properly logged from "start up to shut down." Even if we grant Erickson these points, however, Solseth's testimony also showed that Erickson logged eight hours of pilot time on January 22, 1982, even though the Air Freight Express crew sheet showed *no* flight occurred on that date. Under *Newman*, this testimony established a prima facie case of falsification as to the eight hours which Erickson failed to rebut.

With respect to the Beechcraft owned by North American Life and Casualty, the testimony of Erickson was in conflict with that of Ron Houle, the pilot with whom he flew, and was so recognized by the ALJ. Erickson argues, however, that since "Mr. Houle did not leave exact records as to when Erickson would have manipulated the controls * * * it cannot be inferred that Erickson's log entries were either incorrect or * * * fraudulently made." He argues that the Board's statement that it was "difficult to determine precisely on this record the portion of time that Respondent was the sole manipulator of the controls on passenger flights" is, in essence, an admission "that this essential determination was based on surmise, guess and speculation." However, while the precise number of disputed hours was not completely determinable from the testimony, Houle's testimony was that Erickson did not fly with passengers until he first acquired experience on deadhead flights. The records showed that Erickson's first deadhead flight was on March 30, at which time he had already claimed over fifty hours of passenger-carrying flight time in his log book. The Board therefore concluded that Erickson's logbook contained "perhaps as many as 50 falsely claimed hours of pilot time." In light of the deference we must give to the Board's findings, we conclude that there was substantial evidence upon which the NTSB could infer that Erickson had made a series of false entries with knowledge of their falsity.

The ALJ also found 1.5 hours in a Mitsubishi airplane were falsely logged. The Board did not specifically address this finding in its opinion. As we are affirming the findings of material, knowledgeable falsification in the above instances, we need not consider this issue further.

---

**2.** Erickson also argues that the crew and duty sheets which Solseth compared with the logbook were inadmissible hearsay evidence. Of course, agencies are not bound by the strict rules of evidence used in jury trials. Under the Administrative Procedure Act, any "oral or documentary evidence may be received" if it is not "irrelevant, immaterial or unduly repetitious."

5 U.S.C. § 556(d) (1982). In any event, since the records were compiled in compliance with 14 C.F.R. § 135.63(a)(4)(vii), *see supra* note 1, the hearsay exception of Fed.R.Evid. 803(6) governing records of regularly conducted activity would render the crew and duty sheets admissible.

The revocation, instead of suspension, of Erickson's license was a harsh sentence, as the ALJ recognized in noting that she was bound by Board policy favoring revocation. However, as Erickson pointed out in his appeal to the NTSB, in similar cases suspensions have been upheld. *See, e.g., Beaven C. Hodge,* 1 N.T.S.B. 1849 (1972) (nine-month suspension upheld where respondent fraudulently altered commercial pilot certificate); *see also Wendell W. Levister,* 37 C.A.B. 807 (1962) (revocation of pilot's certificate too harsh a sanction in view of technical character of violations and absence of prior violations). Nonetheless, revocation has also been upheld as appropriate in cases involving falsification of records. *See, e.g., Donald E. Cassis,* Order EA–1831 (Oct. 5, 1982), *aff'd,* 737 F.2d 545 (6th Cir.1984); *Steven Richard Cowell,* Order EA–1285 (May. 23, 1979), *aff'd,* 612 F.2d 505 (10th Cir.1980); *Donald G. Gilbertson,* Order EA–1252 (Feb. 27, 1979), *Robert P. Damsky,* Order EA–1045 (July 25, 1977); John O. *Payton,* 2 N.T.S.B. 1994 (1975); *Volney O. DeRush,* 2 N.T.S.B. 144 (1973). Had we the power to determine the penalty, we might favor suspension. Nevertheless, the strong policy concern for public safety requires that the Board be given a wide range of discretion in imposing sanctions. *See Walker v. Civil Aeronautics Board,* 251 F.2d 954, 956 (2d Cir.1958). Thus, we affirm the order revoking Erickson's certificate for one year.