**Richard W. HELLER,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 85–3847.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 13, 1986.

Rehearing and Rehearing En Banc
Denied Jan. 2, 1987.

Dennis I. Moore, Asst. U.S. Atty., Tampa, Fla., Gary Allen, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., Walter Andrew Welch, Jr., Federal Air Surgeon's Office, Washington, D.C., for defendant-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Richard W. Heller appeals from an order of the district court dismissing his complaint on the ground that the Federal Aviation Administration's ("FAA") denial of a first-class medical certificate was a discretionary function exempted from liability under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 2680(a) (West 1965). Heller argues that the government's negligent failure to consider the 1968 electrocardiogram ("EKG") in his file and the government's negligent application of the medical standard in 14 C.F.R. § 67.13(e)(1)(i) (1986) do not fall within the scope of the discretionary function exception. We disagree. We affirm.

## I. BACKGROUND

### A. *The Statutory and Regulatory Framework*

The Federal Aviation Act, 49 U.S.C.A. §§ 1301–1542 (West 1976 & Supp.1986), was enacted to promote safety in air commerce. *See, e.g.,* 49 U.S.C.A. § 1421(a) (West Supp.1986);[1] *Delta Air Lines v.*

Mark T. McDermott, Washington, D.C., Arvind K. Lal, Arthur F. McCormick, South Miami, Fla., for plaintiff-appellant.

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. 49 U.S.C.A. § 1421(a) (West Supp.1986) provides:

    (a) **Minimum standards; rules and regulations**

    The Secretary of Transportation is empowered and it shall be his duty to promote safety of flight of civil aircraft in air commerce by prescribing and revising from time to time:

(1) Such minimum standards governing the design, materials, workmanship, construction, and performance of aircraft, aircraft engines, and propellers as may be required in the interest of safety;

(2) Such minimum standards governing appliances as may be required in the interest of safety;

(3) Reasonable rules and regulations and minimum standards governing, in the interest of safety, (A) the inspection, servicing, and overhaul of aircraft, aircraft engines, propellers, and appliances; (B) the equipment and

*United States,* 490 F.Supp. 907, 909 (N.D. Ga.1980). In order to achieve this goal, the act provides that "[i]f the Secretary of Transportation finds, after investigation, that such person possesses proper qualifications for, and is physically able to perform the duties pertaining to, the position for which the airman certificate is sought, he shall issue such certificate, containing such terms, conditions, and limitations as to duration thereof, periodic or special examinations, tests of physical fitness, and other matters as the Secretary of Transportation may determine to be necessary to assure safety in air commerce." 49 U.S.C.A. § 1422(b)(1) (West Supp.1986). In discharging this duty, the Administrator requires a pilot to obtain a medical certificate as a condition to the issuance of an airman's certificate which also certifies the pilot's aviation skills. *See* 14 C.F.R. § 61.3(c) (1986).

The Administrator has delegated to the Federal Air Surgeon the authority to "[e]xamine applicants for and holders of medical certificates for compliance with applicable medical standards," and to "[i]ssue, renew, or deny medical certificates to applicants and holders based upon compliance or noncompliance with applicable medical standards." *See id.* § 67.25(a). Subject to certain restrictions, this authority has also been delegated to authorized representatives of the Federal Air Surgeon within the FAA and to Aviation Medical

Examiners ("AME"), private physicians who have been designated by the Federal Air Surgeon. *See id.* §§ 67.23, 67.25(a), 183.21.

The FAA issues medical certificates in three classes. *See id.* §§ 67.13, 67.15, 67.17. A captain of a commercial aircraft must have a first-class medical certificate, and a co-pilot or flight engineer must have at least a second-class certificate.[2] *See id.* §§ 61.3(c), 63.3(a). A third-class medical certificate will allow an airman to fly only as a private pilot. *See id.* § 61.103(c).

In most cases, the applicant for a medical certificate begins the process with an examination by an AME. *See id.* § 67.23. The AME examines the applicant's medical history and his current condition to determine whether he meets the medical standards set forth in the regulations. If the AME denies the certificate, the applicant has thirty days to petition the Federal Air Surgeon for reconsideration. *See id.* § 67.27(a). A denial by the Federal Air Surgeon or by certain other FAA officials is considered a denial by the Administrator, *see id.* § 67.27(b), and is appealable to the National Transportation Safety Board ("NTSB"), *see* 49 U.S.C.A. § 1422(b)(1) (West Supp.1986).

An applicant who fails to meet the medical standards may petition the Federal Air Surgeon for a "special issue" certificate.[3]

facilities for such inspection, servicing, and overhaul; and (C) in the discretion of the Secretary of Transportation, the periods for, and the manner in, which such inspection, servicing, and overhaul shall be made, including provision for examinations and reports by properly qualified private persons whose examinations or reports the Secretary of Transportation may accept in lieu of those made by its officers and employees;

(4) Reasonable rules and regulations governing the reserve supply of aircraft, aircraft engines, propellers, appliances, and aircraft fuel and oil, required in the interest of safety, including the reserve supply of aircraft fuel and oil which shall be carried in flight;

(5) Reasonable rules and regulations governing, in the interest of safety, the maximum hours or periods of service of airmen, and other employees, of air carriers; and

(6) Such reasonable rules and regulations, or minimum standards, governing other practices, methods, and procedure, as the Secretary of Transportation may find necessary to provide adequately for national security and safety in air commerce.

2. Many commercial airlines require the first officer and flight engineer as well as the captain to have a first-class medical certificate. *See Delta Air Lines v. United States,* 490 F.Supp. 907, 919 (N.D.Ga.1980).

3. The exemption regulations have been amended since the denial of Heller's petitions for an exemption from the requirements of 14 C.F.R. § 67.13(e)(1)(i), *see* FAA Amendment No. 67–11, 47 Fed.Reg. 16,298 (1982), but the relevant provisions of the current regulations are substantially the same as those of the prior regulations. Accordingly, we will refer only to the current version of the regulations.

*See* 14 C.F.R. § 67.19 (1986). The Federal Air Surgeon has the discretion to issue a medical certificate to "an applicant who does not meet the applicable provisions of § 67.13, § 67.15, or § 67.17 if the applicant shows to the satisfaction of the Federal Air Surgeon that the duties authorized by the class of medical certificate can be performed without endangering air commerce during the period in which the certificate would be in force." *Id.* § 67.19(a). The Federal Air Surgeon also has the discretion to offer a special flight, test, or evaluation to determine whether the applicant can perform his duties without endangering safety in air commerce. *See id.* § 67.19(a).

### B. *Application for Medical Certification*

Heller is a professional pilot with a commercial airline. In early 1972, he held a first-class medical certificate issued on December 23, 1971. In January 1972, he experienced chest discomfort and was admitted to a hospital for testing. Based on this testing, which included an EKG, Dr. Cheng Yee Teng, an examining physician, diagnosed Heller as having had a myocardial infarction.[4]

Pursuant to 14 C.F.R. § 61.53 (1986), Heller had Dr. Teng notify the AME of his condition, and on February 8, Dr. Teng provided the AME with a medical report. Based upon that report, the AME, acting under the authority of 14 C.F.R. § 67.25(a) (1986), withdrew the issuance of the medical certificate in accordance with 14 C.F.R. § 67.13(a) (1986), since Heller had an "established medical history or clinical diagnosis of ... myocardial infarction" prohibited by 14 C.F.R. § 67.13(e)(1) (1986). As a result, Heller could not be employed as a commercial airline pilot.

Heller applied for recertification on January 10, 1973 and February 4, 1974, but the AME denied his requests for recertification. On October 8, 1974, August 29, 1975,

and August 3, 1976, Heller petitioned for an exemption from 14 C.F.R. §§ 67.-13(e)(1)(i) (1986). The Federal Air Surgeon, however, denied these petitions.

On January 30, 1980, the FAA accepted a letter from Dr. Richard L. Masters as a petition on Heller's behalf for an exemption from Part 67 of the Federal Aviation Regulations. On April 22, 1980, the Federal Air Surgeon found Heller to be qualified for a first-class airman medical certificate and therefore issued such a certificate.

In July 1982, Heller filed a complaint under the FTCA in the United States District Court for the Middle District of Florida, seeking damages for the FAA's negligent denial of an airman's medical certificate. He alleged that the withdrawal of his medical certificate was caused by the "negligent investigation, data collection, data production, and diagnostic procedures and activities of the agents and employees of the Federal Aviation Administration." Record on Appeal, vol. 1, doc. 1 at 3. The government moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) on the ground that the district court lacked subject matter jurisdiction since the claim was barred by the discretionary function exception of the FTCA, 28 U.S.C.A. § 2680(a) (West 1965). Relying on *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), the district court dismissed the complaint because the implementation of the FAA's medical certification program is a discretionary activity protected by § 2680(a):

> The FAA's implementation of a mechanism for medical certification ... is plainly a discretionary activity of the nature and quality protected by § 2680(a).... Medical licensing authority of the FAA is clearly a role where the government is acting "as regulator of the conduct of private individuals." To hold the entire

---

**4.** A myocardial infarction results from the occlusion of one or more of the blood vessels feeding the heart's tissues. When the vessel shuts down, the tissue dies due to a lack of continued sustenance. The resultant heart damage depends upon the size and location of the occluded vessel and the area of tissue involved. *See Day v. National Transportation Safety Board*, 414 F.2d 950, 951 n. 1 (5th Cir.1969).

FAA medical certification process as not excepted would handicap efficient government operations. Furthermore, a decision to not except such medical determinations by the surgeon would be to place these determinations in constant jeopardy to potential tort suits. The safer policy, and thereby the better policy, is to err in favor of grounding a pilot of suspect qualification, thereby fulfilling a greater responsibility to the public at large, than to the individual pilot. Furthermore, the individual acts and decisions in issuing and suspending, or reissuing, a medical certificate are discretionary conducts of a policy and decision making nature intended to be excepted by § 2680(a).

*Heller v. United States,* 620 F.Supp. 270, 271–72 (M.D.Fla.1985) (citations omitted). This appeal ensued.

## II. DISCUSSION

Heller raises two contentions on appeal: (1) that the FAA's failure to consult the 1968 EKG was a nondiscretionary activity, and thus not within the scope of the discretionary function exception; and (2) that since the denial of certification was based solely on the FAA's negligent application of the medical standard contained in 14 C.F.R. § 67.13(e)(1)(i) (1986), and since the application of this standard did not require the FAA to balance competing policy concerns, his claim is not barred by the discretionary function exception.[5] Since this case involves an appeal from an order dismissing the action for lack of subject matter jurisdiction, we accept as true the factual allegations in Heller's complaint. *See, e.g., Gibson v. Firestone,* 741 F.2d 1268,

1270 (11th Cir.1984), *cert. denied,* 469 U.S. 1229, 105 S.Ct. 1230, 84 L.Ed.2d 367 (1985); *Eaton v. Dorchester,* 692 F.2d 727, 731 (11th Cir.1982). For example, we accept as true Heller's allegations that there was a base line EKG taken in 1968,[6] that a comparison of the EKG's on which the disqualification decisions were made with the 1968 EKG would have shown no material change, that the FAA failed to make that comparison, and thus that the disqualification decision itself was negligent.

The FTCA authorizes suits against the United States for money damages for personal injury or death caused by the tortious actions of government employees acting within the scope of their employment, under circumstances where a private person would be liable. *See* 28 U.S.C.A. § 1346(b) (West 1976). The government, however, is immune from suit for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C.A. § 2680(a) (West 1965).

The Supreme Court recently discussed the scope of the discretionary function exception in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Plaintiffs in *Varig Airlines* sought to recover under the FTCA for the FAA's negligence in certifying certain aircraft for use in commercial aviation. Plaintiffs challenged two aspects of the aircraft certification procedure: the FAA's decision to implement the "spot-check" system of compliance review; and

---

**5.** The government contends that the entire FAA medical certification process falls within the scope of the discretionary function exception. Because of our disposition of this case, we do not reach this argument. We do note, however, that in *Alabama Electric Cooperative, Inc. v. United States,* 769 F.2d 1523, 1528–37 (11th Cir. 1985), this court rejected the government's argument that all design decisions are inherently discretionary, concluding that in the absence of social, economic or political policy considerations, a particular design decision is not exempt

from liability under the discretionary function exception.

**6.** The regulations provide that if an applicant for a first-class medical certificate "has passed his thirty-fifth birthday but not his fortieth, he must, on the first examination after his thirty-fifth birthday, show an absence of myocardial infarction on electrocardiographic examination." 14 C.F.R. § 67.13(e)(2) (1986). Heller's 1968 EKG was taken pursuant to this regulation.

the application of that "spot-check" system to the particular aircraft involved in *Varig*.

The Court unanimously concluded that the challenged acts of the FAA were immune from liability under the discretionary function exception. *Id.* 104 S.Ct. at 2765–69. The Court identified two factors that are particularly important in determining whether the acts of a government employee are immune from liability under the discretionary function exception. First, the Court emphasized that "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id.* at 2765. Thus, "the basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability." *Id.* Second, the Court explained that the discretionary function exception plainly encompasses "the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." *Id.* This reflects Congress' desire to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.*

Applying these principles, the Court held that the FAA's decision to implement the "spot-check" system of compliance review fell within the scope of the discretionary function exception. *Id.* at 2768. The Court explained that "[w]hen an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." *Id.* The Court also concluded that the FAA's alleged negligence in failing to check certain specific items in the course of certifying a particular aircraft was immune from liability under § 2680(a):

> The FAA employees who conducted compliance reviews of the aircraft involved in this case were specifically empowered to make policy judgments regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources. In administering the "spot-check" program, these FAA engineers and inspectors necessarily took certain calculated risks, but those risks were encountered for the advancement of a governmental purpose and pursuant to the specific grant of authority in the regulations and operating manuals.

*Id.* at 2768–69.

In *Alabama Electric Cooperative, Inc. v. United States*, 769 F.2d 1523 (11th Cir. 1985), we discussed the scope of the discretionary function exception of § 2680(a). In *Alabama Electric Cooperative*, we considered whether all design decisions are inherently discretionary and thus immune under the discretionary function exception. In rejecting the government's contention that all design decisions fall within the scope of § 2680(a), we observed that " 'if a government official in performing his statutory duties must act without reliance upon a *fixed or readily ascertainable standard,* the decision he makes is discretionary and within the discretionary function exception. Conversely, if there is a standard by which his action is measured, it is not within the exception.' " *Id.* at 1529 (emphasis in original) (quoting *Miller v. United States*, 710 F.2d 656, 663 (10th Cir.1983)). We also emphasized that the fact that a particular decision rests on scientific or technical information does not render the discretionary function exception inapplicable; rather, the key inquiry is "whether or not the professional discretion involves policy considerations." 769 F.2d at 1529 n. 2. Applying these principles, the court concluded that "where the Corps makes a social, economic or political policy decision concerning the design of a particular project, that decision is exempted from judicial review under § 2680(a). In the absence of such a policy decision, the Corps' design decisions are subject to judicial review under the state law tort standards that would normally

govern an action for engineering malpractice." *Id.* at 1536–37.

Heller concedes that the government's decision to implement the airman medical certification process is immune from suit under § 2680(a), but argues that the FAA's negligent failure to consult the 1968 EKG and negligent application of the medical standard in 14 C.F.R. § 67.13(e)(1)(i) (1986) in the instant case were nondiscretionary activities that do not fall within the scope of the discretionary function exception. We reject these contentions.

■ Turning to Heller's first contention, we conclude that the FAA's alleged negligent failure to consider the 1968 EKG is a discretionary activity protected by § 2680(a). In *Payton v. United States,* 679 F.2d 475 (5th Cir. Unit B 1982) (en banc),[7] the Unit B en banc court of the former Fifth Circuit addressed the question of whether a parole board's negligent failure to "acquire, read, or give adequate consideration" to records showing that Whisenhant was a psychotic with homicidal tendencies and would endanger society if released fell within the scope of the discretionary function exception. The court held that this allegation was insufficient to establish that "the board breached a duty sufficiently separable from the decision-making function to be nondiscretionary and outside of the [discretionary function] exception" because "[t]he acquisition and examination of the records on which the Board bases its ultimate decision necessarily implicates its discretionary function:"

> In fulfilling this task, the Board must exercise its judgment by determining the materiality of certain studies and documents and the propriety of relying thereon in reaching its final assessment. Further, the manner and degree of consideration with which the Board examines these materials is inextricably tied to its ultimate decision.

*Id.* at 482 (footnote omitted). Thus, in the instant case, Heller's allegation that the FAA's negligent failure to consider the 1968 EKG in deciding to withdraw Heller's first-class airman's medical certificate falls within the scope of the discretionary function exception.

Heller's second contention (that the FAA negligently applied § 67.13(e)(1)(i) in the instant case) presents a more difficult question. Relying on *Harr v. United States,* 705 F.2d 500 (D.C.Cir.1983), *Beins v. United States,* 695 F.2d 591 (D.C.Cir.1982), and *Duncan v. United States,* 355 F.Supp. 1167 (D.D.C.1973), he asserts that the denial of his certification was based solely on a finding that he had an "established medical history or clinical diagnosis" of myocardial infarction and that since this finding is simply a medical judgment which does not implicate any policy making concerns, the FAA's negligent application of this standard is not within the scope of the discretionary function exception. We reject this contention.[8]

---

7. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of the Unit B en banc court of the former Fifth Circuit. *Id.* at 34.

8. The government also asserts that the discretionary function exception applies to the FAA's denial of a medical certificate because this decision was made pursuant to the regulations governing the issuance of special medical certificates. The Federal Aviation Act provides that "[t]he Secretary of Transportation from time to time may grant exemptions from the requirements of any rule or regulation prescribed under this subchapter if he finds that such action would be in the public interest." 49 U.S.C.A. § 1421(c) (West Supp.1986). Under the regulations, the Federal Air Surgeon has the "discre-

tion" to issue a medical certificate to an applicant who does not satisfy the applicable provisions of the regulations if the applicant establishes that "the duties authorized by the class of medical certificate applied for can be performed without endangering air commerce during the period in which the certificate would be in force." 14 C.F.R. § 67.19(a) (1986). We agree with the government that the Federal Air Surgeon's decision not to issue an exemption from the regulations would fall within the scope of the discretionary function exception since the regulations expressly require the Federal Air Surgeon to determine whether the grant of an exemption would adversely affect public safety. *Cf. Holmes v. Helms,* 705 F.2d 343, 347 (9th Cir.1983) (when applicant appeals from the FAA's denial of an exemption, the FAA "does not need to demonstrate that [he] is disqualified

In *Beins v. United States*, 695 F.2d 591 (D.C.Cir.1982), the D.C. Circuit discussed the applicability of the discretionary function exception to the FAA's medical certification process. In *Beins*, the plaintiff alleged, *inter alia*, that the FAA negligently applied the experts' reports and the FAA's evaluations of his condition to the vision and neurological standards in 14 C.F.R. §§ 67.13(b)(4), .13(d)(2)(ii), .15(b)(3), .15(d)(2)(ii), .17(b)(2), .17(d)(2)(ii) (1986). The court explained that in applying the discretionary function exception to the medical certification process, the court must examine the regulations to determine whether they "instructed the FAA officials to weigh certain medical abnormalities and left a range of policy judgment as to whether to grant a license, or whether the officials were simply required to match these deficiencies against a clear medical standard contained in the regulations." 695 F.2d at 602. The court found that the FAA's medical standards could be divided into three categories: (1) standards that leave little or no discretion to the FAA; (2) standards that require the exercise of medical judgment but no balancing of competing policies; and (3) standards that require the FAA "to balance a medical judgment with a calculation of whether the applicant's medical condition permits him to perform his duties safely." *Id.* at 603–05. The court concluded that the first two categories of the FAA's medical standards did not involve a discretionary decision within the meaning of § 2680(a). *Id.* at 603. The court also suggested in dictum that the medical standard at issue in the instant case (whether an applicant has an "established medical history or clinical diagnosis" of myocardial infarction prohibited by § 67.13(e)(1)(i)) falls in the second category. *Id.* The court explained that this standard

"require[s] the FAA to evaluate a medical condition, not to weigh and balance the effect of the condition on the pilot's ability to perform his duties safely." *Id.* at 603.

In *Harr v. United States*, 705 F.2d 500 (D.C.Cir.1983), the D.C. Circuit held that the FAA's determination that an applicant has an "established medical history or clinical diagnosis" of epilepsy prohibited by 14 C.F.R. §§ 67.13(d)(2)(i)(a), .15(d)(2)(i)(a), .17(d)(2)(i)(a) (1986) fell within the scope of the second category because "[t]he epilepsy standard requires the FAA to evaluate a medical condition, not to weigh and balance the effect of the condition on the pilot's ability to perform his duties properly." *Id.* at 505. The court therefore concluded that the FAA's application of this medical standard did not involve a discretionary decision within the meaning of § 2680(a).

■ Although we do not disagree with the D.C. Circuit's articulation of two categories which would not involve a discretionary decision, (i.e., standards that leave little or no discretion and standards that require medical judgment but no policy considerations), we expressly reject the *Beins* dicta that the standard at issue in this case does not implicate policy considerations. We conclude that, in the context of medical examinations conducted by the FAA to determine whether persons shall be certificated to pilot in air commerce, the determination of whether an applicant has an "established medical history or clinical diagnosis" of myocardial infarction involves not only a medical judgment, but also necessarily implicates policy concerns. In candor, we also recognize that our analysis would probably have produced a different result in *Harr.* Our analysis reads the particular standard at issue in the context of the

under a certain medical regulation," but rather "need only show that granting the exemption would adversely affect safety and thus would not be in the public interest"). In the instant case, however, the FAA initially withdrew Heller's first-class medical certificate and denied his subsequent applications for recertification because he did not satisfy the requirements of § 67.13(e)(1)(i). Thus, since the initial decisions concerning Heller's certificate were not based on the regulations governing exemptions, the fact that the subsequent denials of an exemption would be the exercise of a discretionary function protected by § 2680(a) does not necessarily exempt the government from liability for a prior negligent determination that Heller had an "established history or clinical diagnosis" of myocardial infarction.

overall statutory and regulatory scheme. Read in this context, we hold that the FAA determination pursuant to § 67.13(e)(1)(i) necessarily implicates safety considerations.

■ A primary purpose of the Federal Aviation Act is to promote air safety. *See, e.g., Meik v. National Transportation Safety Board,* 710 F.2d 584, 586 (9th Cir. 1983); *Dodson v. National Transportation Safety Board,* 644 F.2d 647, 651 (7th Cir.1981); *Day v. National Transportation Safety Board,* 414 F.2d 950, 953 (5th Cir.1969). As we explained in *Day* where we upheld the validity of the regulation at issue in the instant case, "[i]t is well known that there is very little second chance given to one who loses control of an aircraft, particularly during critical periods of flight. Any regulation involving physical standards will cause a certain number of people to be deprived of their privilege of flying but abolition of the criteria would cause risk to the public far in excess of any benefit to the individual." 414 F.2d at 953 n. 2. Courts have also repeatedly emphasized that the medical standards are not designed for the benefit of an airman, but rather are intended to provide guidance for medical experts in their determination of whether the airman is suffering from a disorder that prevents him from performing his duties safely. *See, e.g., Holmes v. Helms,* 705 F.2d 343, 345 (9th Cir.1983); *Dodson,* 644 F.2d at 651; *Greve v. C.A.B.,* 378 F.2d 651, 656 (9th Cir.1967). The history of the regulation at issue here also reflects this emphasis on safety:

> The [Flight Safety] Foundation recommends, in effect, that [the] existence of [a history of myocardial infarction] is an appropriate basis for disqualification for any class of medical certificate. This recommendation is based on the medical fact that [this condition] can[not] be as precisely studied in the individual as to provide assurance that they will not interfere with the safe piloting of aircraft. In reality, the likelihood of occurrence of partially or totally incapacitating states directly attributable to these conditions is so great, and the ability to provide acceptable medical assurance of nonoccurrence of such states in any given individual is so inadequate, that these conditions existing in airmen constitute a definite hazard to safety in flight.

24 Fed.Reg. 7307, 7309 (1959).

The emphasis on safety in the statute and the recognition in the regulations of the difficulty of determining whether the existence of a history of myocardial infarction will affect air safety establish that the FAA's determination of whether an applicant has an "established medical history or clinical diagnosis" of myocardial infarction will be based on more than a medical judgment. Rather, this decision will necessarily be influenced by the fact that the ultimate decision is whether this particular applicant should be permitted to fly. In other words, the FAA in applying the medical standard at issue in the instant case will make its decision in a conservative manner so as to avoid any substantial safety risk. This consideration of safety in deciding whether an applicant has an "established history or clinical diagnosis" of myocardial infarction obviously implicates the policy concerns protected by § 2680(a).

We recognize that some of the medical standards articulated in the regulations expressly require the FAA to consider safety, and thus expressly incorporate policy considerations. *See* 14 C.F.R. §§ 67.13(d)(1)(ii), .13(d)(2)(ii), .13(f)(2), 67.15(d)(1)(ii), .15(d)(2)(ii), .15(f)(2), 67.17(d)(1)(ii), .17(d)(2)(ii), .17(f)(2) (1986). We also recognize that other standards, including the standard at issue here, § 67.13(e)(1)(i) (established medical history or clinical diagnosis of myocardial infarction), do not expressly incorporate safety considerations. However, for the reasons discussed above, we conclude that the FAA's determination of whether Heller had an "established medical history or clinical diagnosis" of myocardial infarction necessarily implicates policy concerns. Thus, we conclude that the FAA's application of § 67.13(e)(1)(i) in the instant case is a dis-

cretionary decision within the meaning of § 2680(a).[9]

### III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

**9.** Because we affirm the district court's dismissal of the case on the discretionary function ground, we do not reach the issue of whether or not Heller's claim is also barred by the statute of limitations.