**In the Matter of TPI INTERNATIONAL AIRWAYS, INC., Debtor.**

**TPI INTERNATIONAL AIRWAYS, INC., Plaintiff,**

v.

**FEDERAL AVIATION ADMINISTRATION; an agency of the United States; Department of Transportation, a Department of the United States Government, Defendants.**

**Bankruptcy No. 91–20162.**
**Adv. No. 91–2030.**

United States Bankruptcy Court, S.D. Georgia.

June 24, 1992.

Jean Frances Niven, William S. Orange, III, Brunswick, Ga., for plaintiff, debtor.

Ruth H. Young, Asst. U.S. Atty., Savannah, Ga., for defendants.

## MEMORANDUM AND ORDER

LAMAR W. DAVIS, Jr., Chief Judge.

Plaintiff filed its Chapter 11 petition in February of 1991. On July 22, 1991, Plaintiff filed this adversary proceeding seeking money damages against the Defendant, the Federal Aviation Administration ("FAA"). The FAA filed its Motion to Dismiss on August 29, 1991. A scheduling conference was held on September 10, 1991, to consider the Motion to Dismiss and other motions filed in the case.

## I. BACKGROUND

### A. *Statutory and Regulatory Framework*

The Federal Aviation Act, 49 U.S.C.App. § 1301 et seq., was enacted to promote safety in air commerce. *See* 49 U.S.C.App. § 1421(a)(1). The FAA is empowered to prescribe reasonable rules, regulations and minimum standards regarding aircraft safety. *See* 49 U.S.C.App. § 1421(a)(3) and (a)(6).

The FAA is the appropriate agency to issue an air carrier operating certificate.[1] *See* 49 U.S.C.App. § 1424(b). The regulations provide that no person may engage in air transportation without an air carrier operating certificate and operating specifications issued under 49 U.S.C.App. § 1421. *See* CFR § 121.3. The operations specifications list the air transportation activities that may be conducted pursuant to an air carrier operating certificate. *See* 14 CFR § 121.45.

The FAA's Flight Standards District Offices are charged with inspecting the aircraft and operations of certified air carriers and may amend the operating specifications. In Georgia, the Flight Standards District Office is found in Atlanta. Generally, the standards used by the FAA to evaluate safety are found in 14 CFR § 121.1, *et seq.*

Each certificate holder is required to allow the FAA to make inspections to determine compliance with the Federal Aviation Act and regulations. The FAA's airworthiness inspectors evaluate an air carrier's operations and compliance with FAA rules and regulations. The FAA provides guidance for regulation enforcement and sanc-

---

1. This air carrier operating certificate is separate from and in addition to the required certificate of public convenience and necessity issued by the Department of Transportation.

**514**

tions in its Compliance and Enforcement Handbook, FAA Order 2150.3A.

## B. *TPI's Adversary Proceeding*

Plaintiff, TPI International Airways, Inc. ("TPI"), is an air carrier which filed its Chapter 11 petition on February 21, 1991. In order to be a certified carrier and to conduct flight operations, TPI must have an air carrier operating certificate and operations specifications from the FAA. *See* 49 U.S.C.App. §§ 1424; 1430(a)(4). Additionally, TPI must have a separate certificate of public convenience and necessity, "economic authority" from the Department of Transportation ("DOT"). *See* 49 U.S.C.App. § 1371(a) and (r); 14 CFR § 204.1, et seq. Currently, TPI is unable to resume its flight operations because it lacks the proper certification and authority from DOT.

In August 1990, TPI officials met with FAA officials in Atlanta. The FAA informed TPI that the FAA's safety concerns were sufficient for enforcement action that could lead to revocation or suspension of TPI's operating specifications. Following the Atlanta meeting, TPI voluntarily surrendered its operating specifications to the FAA. When the operating specifications were surrendered, rendering TPI unable to conduct any flight operations, the DOT automatically suspended TPI's certificate of public convenience and necessity under the dormancy rules. *See* 14 CFR 204.7.

In May of 1991, the FAA voluntarily returned the operating specifications to TPI. However, the DOT has failed to return the certificate of public convenience and necessity, which prevents TPI from resuming its flight operations. The DOT is conducting a fitness review of TPI pursuant to the dormancy regulations to determine if the certificate should be returned.

TPI filed this adversary proceeding against the FAA on July 22, 1991. In Count One of the adversary, TPI objects to the FAA's proof of claim filed in TPI's Chapter 11 case. The FAA filed a general unsecured claim for $810,000.00 based on amounts due for civil penalties resulting from violations of FAA rules and regulations. *See* 49 U.S.C.App. § 1471. In its proof of claim, the FAA states that the claim is based on certain alleged operating and maintenance violations of the Federal Aviation Regulations. As exhibits attached to the proof of claim, the FAA filed a general summary of the violations and letters sent to the Debtor explaining the violations. The first letter, dated August 20, 1990, refers to TPI's deferred maintenance of a propeller spinner de-icer system. The second letter dated August 24, 1988, refers to TPI's failure to correct fuel tank leaks in its aircraft in accordance with FAA procedures and for flying such aircraft without the proper repairs. According to the FAA, it is continuing to compile the investigative reports to further substantiate the civil penalties summarized in its proof of claim. *See* 49 U.S.C.App. § 1471.

Count Two of TPI's adversary is a claim for monetary damages as a result of the loss of TPI's operating specifications. TPI alleges that it "was forced to surrender its Operating Specifications to the Federal Aviation Administration under the threat of revocation of the Debtor's Air Carriers Certificate." *See* Complaint paragraph 10. TPI further alleges that the Defendant misrepresented to Debtor's Chief Executive Officer that TPI had a history of safety violations and misrepresented evidence of these violations. Debtor claims that under this threat, allegedly based on untrue facts, Debtor surrendered its operating specifications. Debtor claims that the FAA wrongfully withheld the operating specifications until May of 1991 and that this wrongful suspension caused Debtor to lose its executory contracts and other business. Debtor also claims that the operating specifications were wrongfully taken without procedural or substantive due process and without regard to equal protection of the laws as guaranteed by the Fifth and Fourteenth Amendments to the Constitution. Debtor alleges that it has suffered losses in excess of $20,000,000.00 as a result of Defendant's acts.

TPI's claims sound in tort. TPI has alleged a claim for intentional misrepresentation in that the FAA officials intentionally

made a mis-statement of fact on which TPI relied to its detriment and suffered damages. TPI has also stated a claim for conversion in that the FAA intentionally and wrongfully withheld TPI's property, the operating specifications, until the operating specifications were returned in May. At the September hearing TPI alleged that the FAA's actions also constituted tortious interference with business.

The United States, on behalf of the FAA, filed this Motion to Dismiss on August 29, 1991. A scheduling conference was held on September 10, 1991, at which time the FAA argued the basis for its motion. The FAA claims that TPI's suit should have been filed against the United States instead of the FAA and that the suit, based on tort claims, is barred by the Federal Tort Claims Act ("FTCA"). The FAA moves for dismissal for lack of subject matter jurisdiction.

TPI filed its brief in opposition to the Motion to Dismiss on December 26, 1991. TPI asserts that the FTCA does not apply and that the government has waived its sovereign immunity and should be subject to suit. TPI also filed part of the deposition of Mr. Ronald Hagadone, an attorney and assistant chief counsel in the FAA's Atlanta office. TPI's attorney questioned Mr. Hagadone about the FAA's enforcement handbook, FAA Order 2150.3A. TPI emphasizes the following question and answer given at that deposition:

Q. Is the FAA required to give EIR's [Enforcement Investigative Reports] consistent with this order, that is, 2150.3A?

A. Consistent with it, yes.

*See* page 33 of the deposition of Ronald Hagadone filed with TPI's Brief in Response to the Motion to Dismiss. TPI argues that it was in compliance with FAA rules and regulations, that the FAA would have had no basis under FAA Order 2150.3A to revoke the operating specifications or certificate, and that the FAA's statements to TPI officials concerning violations and possible sanctions were misrepresentations.

The government asserts that FAA Order 2150.3A is not mandatory but is a guideline for determining appropriate sanctions and cites the following language found in that Order:

Its purpose is to assist, not replace, the exercise of prosecutorial judgment ... [It] is intended to be an aid in the exercise of discretion of the various FAA elements involved. It is recognized that this handbook does not cover every situation, and there will be cases where deviation from the guidance is warranted.

FAA Order 2150.3A at Appendix 4; FAA Order 2150.3A. According to the government, FAA officials use the handbook as a guide when making discretionary decisions. In addition to its proof of claim summary, the FAA also submits a draft civil penalties letter, which specifically cites numerous safety violations by TPI. *See* Exhibit "B" attached to the FAA's Supplemental Brief in Support of Motion to Dismiss filed October 17, 1991. The FAA argues that its decisions were discretionary and that a suit for damages against it would be barred by the discretionary function exception to the tort claims act. *See* 28 U.S.C. § 2680(a). The FAA moves to dismiss for lack of subject matter jurisdiction based on both applicable exceptions to the FTCA, 28 U.S.C. § 2680(a) and (h).

## II. DISCUSSION

A. *Sovereign Immunity and the Misrepresentation Exception to the Federal Tort Claims Act*

■ The first jurisdictional defense to be addressed is the doctrine of sovereign immunity. Sovereign immunity bars all lawsuits against the United States in the absence of express Congressional consent. *Block v. North Dakota ex rel. Bd. of University and School Lands*, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). Any consent by the government is to be strictly construed. *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). *See also United States v. Nordic Village, Inc.*, — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). A waiver of sovereign immunity "cannot be implied but must

be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607, 613 (1980) [Quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52, 56 (1969).]

Congress has provided a limited waiver of immunity in the Bankruptcy Code found in 11 U.S.C. Section 106, which provides:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains 'creditor,' 'entity,' or 'governmental unit' applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106. Section 106(a), the section applicable here, clearly provides that Congress has waived sovereign immunity of a governmental unit only when the following conditions are met:

(1) the estate has a claim against the governmental unit and the governmental unit has a claim against the estate;

(2) the claim against the governmental unit is property of the estate; and

(3) the claims of each must arise out of the same transaction and occurrence.

*Cowart v. Internal Revenue Service (Matter of Cowart)*, 128 B.R. 492, 497 (Bankr. S.D.Ga.1990) [Citing *In re Davis*, 20 B.R. 519, 521 (Bankr.M.D.Ga.1982), *vacated on other grounds*, 899 F.2d 1136 (11th Cir. 1990).]

In this case the government has filed its proof of claim in TPI's bankruptcy case, and TPI has filed its claims in this adversary against the government. TPI's $20,-000,000.00 claim is in excess of the amount claimed by the government. Thus, part one of the *Cowart* test set out above is satisfied.

TPI also has a claim against the government which is considered property of the estate. It has been established that a claim for damages by a debtor should be considered "property of the estate" as defined in 11 U.S.C. Section 541(a)(1). *See Taylor v. United States (In re Taylor)*, Ch. 13 Case No. 89–11583, Adv. No. 90–1036, slip op. at 5 (Bankr.S.D.Ga. Sept. 24, 1990) (A claim for damages by a debtor under § 362(h) is property of the estate as defined in 11 U.S.C. § 541(a)(1)). 11 U.S.C. Section 541(a)(1) provides in relevant part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) ... all *legal or equitable interests* of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1) (emphasis added). As TPI has a "legal interest" or claim against the FAA, considered part of the estate, part two of the *Cowart* test requiring property of the estate is satisfied.

The third requirement of the *Cowart* test is a finding that the debtor's claim arose out of the same transaction or occurrence as the government's claim. This transaction or occurrence test requires an analysis as to whether or not the claim is a compulsory counterclaim under Federal Rule of Civil Procedure 13. Under Rule 13, a compulsory counterclaim is a claim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Binding precedent requires this Court to employ the "logical relationship test" in establishing whether or not a claim is a compulsory counterclaim. Under the logical relationship test the Court should consider the following:

Whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues should be resolved in one lawsuit. A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant. (Citations omitted).

*United States v. Bulson,* 117 B.R. 537 (9th Cir. BAP 1990).

The government's claim filed in TPI's bankruptcy case is based on civil penalties arising from TPI's alleged violations of FAA rules and regulations. TPI's claim is for misrepresentation of those violations, withholding the operating specifications due to the alleged violations, and other related torts involving the operating specifications. As the claims of both the government and TPI arise out of the same transaction or occurrence, the claims are sufficiently related to satisfy the compulsory counterclaim requirement of Section 106(a). Thus, all three of the requirements of the *Cowart* test set out above have been satisfied.

In *United States v. Nordic Village, Inc., supra,* the Supreme Court discussed the waiver of sovereign immunity found in Section 106. The issue in *Nordic Village* was specifically whether Section 106(c) was an unequivocal waiver of sovereign immunity for actions for monetary relief. The Court concluded that the waiver in Section 106(c) should subject the government to declaratory and injunctive relief against it but not monetary relief as that subsection was not unequivocal.

In discussing subsection (c) of Section 106, the Supreme Court compared the waiver there with the separate waivers found in subsections (a) and (b). According to the Court:

Subsections (a) and (b) of § 106 meet this "unequivocal expression" requirement with respect to monetary liability. Ad-

dressing "claim[s]", which the Code defines as "right[s] to payment", 11 U.S.C. § 101(4)(A), they plainly waive sovereign immunity with regard to monetary relief in two settings: compulsory counterclaims to governmental claims, 11 U.S.C. § 106(a); permissive counterclaims to governmental claims capped by a set off limitation, 11 U.S.C. § 106(b). Next to these two models of clarity stands subsection (c). Though it, too, waives sovereign immunity, it fails to establish unambiguously that the waiver extends to monetary claims.

112 S.Ct. at 1015. Thus, the Supreme Court concluded that the government should be subject to monetary liability under the unambiguous Section 106(a) when the Debtor's claim is a compulsory counterclaim to the government's claim. In the case at bar, the government may be subject to Debtor's claim for damages as immunity has been waived under Section 106(a). *See also Hoffman v. Connecticut Dept. of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (Subsections (a) and (b) of Section 106 provides an express authorization for monetary recovery against the government).

■ Although the requirements for waiver of sovereign immunity under Section 106(a) appear to have been met, the government argues that the FTCA is the exclusive remedy for asserting a tort claim for damages against the government and that sovereign immunity has not been otherwise waived despite Section 106(a) and that FTCA exceptions demand dismissal of this case. The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq., provides the exclusive remedy for claims against federal agencies or employees for money damages that are based in tort. *See* 28 U.S.C. §§ 1346(b) and 2679. The government cites two exceptions to the tort claims act which provide as follows:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the exe-

cution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government whether or not the discretion involved be abused.

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, deceit, or interference with contract rights ...

28 U.S.C. § 2680. Section 2680(a) is the discretionary function exception to the FTCA, which shall be addressed below. Section 2680(h) is the section which excepts liability for certain torts. As listed above claims for misrepresentation, deceit, or interference with contract rights are specifically excluded by the FTCA. An apparent conflict exists between Section 106(a) which constitutes a broad waiver of sovereign immunity and the FTCA, which is more limited in scope, as to certain torts.

Under rules of statutory construction, courts should construe statutes harmoniously, especially where the statutes deal with the same subject matter. *Anderson v. Federal Deposit Insurance Corporation*, 918 F.2d 1139, 1143 (4th Cir.1990). The Fourth Circuit in *Anderson* concluded that Section 106 could be and should be interpreted consistently with the FTCA. *Id.* at 1143.

In *Anderson*, the debtor sued a group of bank directors in state court. The Federal Deposit Insurance Corporation ("FDIC") removed the action to the United States District Court after the FDIC was added as a party defendant. Subsequently, the debtor filed his Chapter 7 case, in which the FDIC filed a claim. The bankruptcy trustee settled the claims against the directors but decided to pursue claims against the FDIC including avoidance of a fraudulent transfer, equitable subordination, and con-

version. The District Court concluded that the trustee's claims "sounded in tort" and that the FTCA was the exclusive remedy for such tort claims. The District Court also determined that Section 106 of the Bankruptcy Code and the FTCA conflicted and that the trustee had not complied with the FTCA. The court dismissed the case for lack of subject matter jurisdiction as no administrative claim had been filed and as the United States had not been sued under the FTCA. *Anderson*, 918 F.2d at 1143.

The Fourth Circuit vacated the judgment of the District Court and remanded the case. According to the Fourth Circuit, there was no inconsistency in finding that the FDIC waived sovereign immunity under both Section 106 and the Tort Claims Act when it filed a claim against the debtor's estate. According to the Fourth Circuit, "to allow the FDIC to participate in the estate without subjecting itself to any liability it has to the trustee 'would be one-sided'." *Anderson*, 918 F.2d at 1143 [Quoting S.Rep. No. 989, 95th Cong., 2d Sess., reprinted in 5 U.S.Code Cong. & Admin.News 5787, 5815 (1978).]

In accordance with that decision I hold that the defense of sovereign immunity is waived under both Section 106 and the FTCA in this case.

■ Moreover, as in *Anderson*, this case should not be dismissed for failure to exhaust administrative remedies or to name the United States as the appropriate party to be sued. *Anderson*, 918 F.2d at 1144. *See also Ashbrook v. Block*, 917 F.2d 918 (6th Cir.1990) (The legislative history of Section 106(a) unequivocally conveys that the government's exposure to liability is automatic upon filing a proof of claim and makes no reference to administrative exhaustion).

The Fourth Circuit in *Anderson* followed the seminal case on sovereign immunity. *In re Inslaw, Inc.*, 76 B.R. 224, 234 (Bankr. D.D.C.1987).[2] In *Inslaw* the Bankruptcy

---

**2.** At the September 10th hearing, the government stated that *Inslaw (In re Inslaw)*, 76 B.R. 224 (Bankr.D.D.C.1987), had been reversed. In *In re INSLAW*, 83 B.R. 89 (Bankr.D.D.C.1987), the Bankruptcy Court found a willful violation

of the stay by the government. The Bankruptcy Court was affirmed by the District Court at 113 B.R. 802. The District Court was reversed by the D.C.Circuit, which held that there was no violation of the stay. *See United States v. In-*

Court concluded that "the Bankruptcy Code's explicit waivers of sovereign immunity are entirely distinct, separate and independent from and in addition to those found in any other statute, including the FTCA." *Inslaw,* 76 B.R. at 234. Thus, Section 106(a) has been interpreted by at least two courts to provide a waiver of sovereign immunity for tort-based suits independent of the FTCA. However, I must consider the FAA's defenses based on the discretionary function exception to the FTCA separately.

## B. *The Discretionary Function Exception to the FTCA*

■ Although the authorities indicate that the government should be subject to tort claims under Section 106(a) despite procedural requirements of the FTCA, the FTCA contains an additional exception from liability when the act of the government is a discretionary function. According to the government, the substantive provision of the FTCA which excepts liability for suits based on a discretionary function cannot be waived and applies whether this case is viewed as an FTCA case or one brought pursuant to the Section 106 waiver.

As indicated above, Section 2680(a) of the FTCA excepts liability for the performance of a discretionary function or duty on the part of a federal agency whether or not the discretion is abused. 28 U.S.C. § 2680(a). The United States Supreme Court discussed the discretionary function exception in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). The plaintiffs in *Varig* attempted to recover damages under the FTCA for the FAA's negligence in certifying certain commercial aircraft. The plaintiff's attacked the aircraft certification procedure including the FAA's decision to implement a spot-check system and the FAA's use of that system to inspect Varig's aircraft.

The Supreme Court unanimously concluded that the FAA was immune from suit under the discretionary function exception. The Court examined the nature and quality of the government acts to determine if Congress intended to except liability. According to the Court the discretionary function exception protects acts of the government in regulating private individuals and furthers the congressional desire to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 814, 104 S.Ct. at 2765.

The Eleventh Circuit has also ruled on the discretionary function exception to the FTCA. According to the Court, the primary question in applying the exception is whether or not the professional discretion involves policy considerations. *Heller v. United States,* 803 F.2d 1558, 1563 (11th Cir.1986). In *Heller,* the Court discussed and applied *Varig Airlines, supra,* to hold that the FAA was not subject to a tort claim under the FTCA for alleged negligent failure to consider a pilot's medical history and to timely recertify the pilot. Both *Varig Airlines* and *Heller* excluded government liability for discretionary acts where the government may have been negligent in performing its duties.

■ TPI alleges that the FAA's actions were intentional, not merely negligent, and in effect in bad faith. However, the discretionary function exception provides immunity whether or not the discretion was abused. A government official's subjective intent should not be taken into consideration when applying the discretionary function exception to the FTCA. *See United States v. Gaubert,* —— U.S. ——, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335 (1991). Taking TPI's allegations to be

---

*slaw, Inc.,* 932 F.2d 1467 (D.C.Cir.1991). The Circuit Court did not discuss the sovereign immunity issue. The Circuit Court reversed and remanded the case with directions to vacate all orders concerning the Department's alleged violation of the automatic stay and to dismiss the complaint for lack of jurisdiction. *See United States v. Inslaw, Inc.,* 132 B.R. 808 (D.D.C.1991), where the District Court vacated its orders in the *Inslaw* case. Thus, the Order on the Motion to Dismiss, 76 B.R. 224, was vacated and the complaint dismissed.

true, that the FAA did intentionally withhold the operating specifications without just cause and with intent to harm TPI's business interests, such a decision would have been an abuse of discretion, subject to review in an appropriate forum, but could not have been the basis for a tort claim for damages under the FTCA. *See Scanwell Laboratories, Inc., v. Thomas,* 521 F.2d 941, 948 (D.C.Cir.1975) (Under the FTCA, even a gross abuse of discretion will not predicate an award of tort damages). TPI could have invoked the Administrative Procedures Act for court review of the government's alleged arbitrary action but could not obtain a damage award against the government.

The decision to take action against TPI and to withhold the operating specifications once surrendered was based upon the government's authority to regulate and promote air safety. According to the Supreme Court in *Varig Airlines:*

> The FAA's implementation of a mechanism for compliance review is plainly discretionary activity of the 'nature and quality' protected by 2680(a). When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind.

*Varig Airlines,* 467 U.S. at 819–820, 104 S.Ct. at 2767. An administrative decision regarding air safety is the type of decision grounded in social policy and public welfare considerations so as to be excluded from a suit for damages under the discretionary function exception to the FTCA and from extensive judicial review.

The discretionary function exception is grounded in principles of law and judicial construction, which go beyond the application of the FTCA. As stated by the Supreme Court in *Varig Airlines:*

> It was believed [by Congress] that claims of the kind embraced by the discretionary function exception would have been exempted from the waiver of sovereign immunity by judicial construction; nevertheless, the specific exception was added to make clear that the act was not to be

extended into the realm of the validity of legislation or discretionary administrative action.

*Varig Airlines,* 467 U.S. at 810, 104 S.Ct. at 2762–63. The discretionary function exception to the FTCA is based in part on the separation of powers doctrine which holds that the judiciary should not interfere with the executive policy considerations.

The Eleventh Circuit in discussing the discretionary function exception concluded that:

> The principle of separation of powers requires that the judiciary refrain from interfering in those executive branch actions that involve questions of public policy, economic expediency and administrative practicability. *Williams v. United States,* 747 F.2d 700 (11th Cir.1984) (per curiam), aff'g and adopting, *Williams ex rel. Sharpley v. United States,* 581 F.Supp. 847, 852 (S.D.Ga.1983); accord *Canadian Transport Co. v. United States,* 663 F.2d 1081, 1085–86 (D.C.Cir. 1980); *Gercey v. United States,* 540 F.2d 536, 539 (1st Cir.1976), cert. denied, 430 U.S. 954, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977).

*United States Fire Ins. Co. v. United States,* 806 F.2d 1529, 1534–35 (11th Cir. 1986) (other citations omitted). The basic question presented by the discretionary function exception is "whether the judgments of a Government employee are of 'the nature and quality' which Congress intended to put beyond judicial review." *Downs v. United States,* 522 F.2d 990 (6th Cir.1975). *See Smith v. United States,* 375 F.2d 243, 246 (5th Cir.1967), cert. denied, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967).

In *United States Fire Ins. Co. v. United States, supra,* the Eleventh Circuit held that the Public Vessels Act, like the Suits in Admiralty Act implicitly contains a discretionary function exception to the United States' waiver of immunity. The Court based its decision on the separation of powers doctrine. According to the Eleventh Circuit, the test as to whether an action is within the discretionary function exception is whether the government's act is per-

formed at a planning rather than operational level. 806 F.2d at 1535–36. The distinction there was drawn between the decision to place an aid to navigation (which is protected by the exception) and the execution of that decision by the crew of a Coast Guard vessel (which is not).

As applied to the facts in this case, I rule that the actions of the FAA are administrative acts which involve discretionary authority to regulate air safety and not mere ministerial or operational acts. As such they are the type of acts which Congress expressly intended to put beyond judicial review with respect to potential tort liability under the FTCA and that the defense is implicitly extended to a Section 106 tort action, as occurred in *United States Fire, supra.*

The Supreme Court first discussed the discretionary function exception in *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). There, the Court reviewed the limited legislative history of the discretionary function exception. According to an Assistant Attorney General testifying before the House Committee on the Judiciary, liability should not arise "out of authorized activity." The exception was "designed to preclude application of the bill to a claim against a regulatory agency, such as the Federal Trade Commission or the Securities and Exchange Commission, based upon an alleged abuse of discretionary authority by an officer or employee." Even without implementation of Section 2680(a), "it is improbable that the courts would extend a tort claims act into the realm of the validity of legislation or discretionary administrative action." *Dalehite v. United States,* 346 U.S. 15, 27–30, n. 16, n. 21, 73 S.Ct. 956, 963–65, n. 21, 97 L.Ed. 1427 (1953).[3] According to the Supreme Court, the discretionary function exception should apply whether the government's acts were negligently performed or involved an abuse of discretion. 346 U.S. at 34, 73 S.Ct. at 967.

In accordance with the above authorities it is appropriate for the court to refuse to entertain a tort action which arises out the exercise of discretionary regulatory authority. Such refusal is consistent with the separation of powers doctrine even in the absence of express language such as that found in the Federal Tort Claims Act. Thus, although there has been waiver of immunity pursuant to Section 106(a) of the Bankruptcy Code, separate and independent from the Federal Tort Claims Act, nonetheless TPI's claims cannot be entertained due to the discretionary function exception which is implicitly applicable to the FAA's conduct.

I conclude that the FAA's decision to commence enforcement actions against TPI was a discretionary administrative decision; therefore the United States and its agency, the FAA, should not be liable in tort for withholding TPI's operating specifications or for any alleged misrepresentations regarding TPI's violations of FAA rules and regulations. Therefore, Count Two of Debtor's adversary should be dismissed. However, Debtor is entitled to object to the FAA's proof of claim and to be provided with documentation supporting the claim for penalties. The FAA has asserted that it is continuing to compile its investigative reports and that an amended proof of claim may be filed. Therefore, dismissing Count One of Debtor's complaint would be premature. Count One of Debtor's adversary will be subject to further hearings to finalize the amount owed to the FAA.

### ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the government's Motion to Dismiss is granted in part with Count Two of Debtor's adversary to be dismissed. The government's Motion to Dismiss Count One is overruled.

---

3. *See* statements by then Assistant Attorney General Francis M. Shea at hearings before the Committee on the Judiciary, H.Rep., 77th Cong., 2d Sess., on H.R. 5373 and H.R. 6463, p. 29.